**Larry Joe MOORE and Moore Exploration, Inc., et al., Appellants,**

v.

**CANADIAN COMMERCIAL BANK and Manufacturers Hanover Leasing Corporation, Appellees.**

No. B14–83–377CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 14, 1984.

Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellants.

W.R. Malone, Walsh & Wright, Huntsville, for appellees.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION ON MOTION FOR REHEARING

ELLIS, Justice.

The previous opinion rendered in this cause on April 12, 1984 is withdrawn and the following is substituted.

Larry Joe Moore and Moore Exploration, Inc., appellants, appeal from a judgment rendered against them in favor of appellees, Canadian Commercial Bank and Manufacturers Hanover Leasing Corporation. Appellants obtained a valid judgment against Omnex Energy Services, Inc. They attempted to collect their judgment by causing a levy on certain drilling rigs owned by Omnex Energy Services, Inc. Appellees claimed that they were entitled to the same drilling rigs as security for certain unpaid loans. Appellees sued appellants for an injunction and damages caused by the wrongful levy. Trial was to a jury which found favorably for the appellees. The jury found that the levy of the writs of execution on rigs # 8 and # 15 owned by Manufacturers Hanover and rigs # 5, # 9, and # 10 owned by Canadian Commercial Bank was wrongful. The jury found that $92,617.50 would compensate Canadian Commercial Bank for damages to rig # 10 experienced by reason of the levy of execution by appellants. The jury found no damage as to rigs # 5 and # 9 owned by Canadian Commercial Bank and rigs # 8 and # 15 owned by Manufacturers Hanover. The trial court entered judgment granting the injunctive relief both appellees had asked for in their initial pleadings. Appellants filed a motion for new trial which was overruled. Appellants have now perfected this appeal. They raise four points on appeal.

Appellants first argue that the trial court erred in overruling their Motion for Judgment N.O.V. as to damages because there was no evidence to support the jury's answer to Special Issue No. 6 finding damages in the amount of $92,617.50 as a result of the levy of execution on rig 10. The appellants' second point of error is that the trial court erred in overruling their Motion for a New Trial because there was factually insufficient evidence to support the jury's answer to Special Issue No. 6 finding damages in the amount of $92,617.50 as a result of the levy of execution of rig # 10. Points of error three and four have been waived by appellants and need not be addressed.

Our first concern in this case is whether there was any evidence to support the jury's answer to Special Issue No. 6 finding damages in the amount of $92,617.50 as a result of the wrongful levy of execution on rig # 10. In reviewing a no evidence point, only evidence and reasonable inferences therefrom supporting the findings are considered. If there is probative evidence, more than a scintilla to support the findings, the no evidence argument should be overruled. *Clover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981). Applying these evidentiary standards, we hold that there was some evidence to support the jury's answer to Special Issue No. 6. Appellant's first point of error is overruled.

We now consider whether there was factually sufficient evidence to support the jury's answer to Special Issue No. 6.

In January of 1981, appellants entered negotiations with John McBean, President of Omnex Energy Services, regarding the

lease of three drilling rigs. A contract with Omnex Energy Services, Inc., leasing the three rigs was signed on January 30, 1981. In February, 1981, appellants received notice from McBean informing appellants that the contract would not be performed. Later that year, appellant filed suit against Omnex Energy Services, Inc. for breach of contract.

In the Spring of 1981, Omnex Energy Service obtained a loan from the Royal Bank of Canada to purchase and operate Omnex drilling rig # 5. Shortly thereafter, McBean negotiated a loan from appellee, Manufacturers Hanover Leasing Corporation for the purpose of acquiring Omnex rigs number 6, 8, and 15.

In August of 1981, McBean contacted Canadian Commercial Bank and applied for more loans. Canadian Commercial made a loan to Omnex Energy Services, Inc. for the purpose of refinancing Omnex rig # 5 and for the purchasing of Omnex rigs # 9 and # 10. Both Canadian Commercial Bank and Manufacturers Hanover filed financing statements with the Texas Secretary of State showing a security interest in their rigs.

In early 1982, the loans from both Canadian Commercial and Manufacturers Hanover were in default. In June of 1982, Canadian Commercial took possession of its rigs. On September 28, 1982, appellants obtained a judgment against Omnex Energy Services, Inc. in excess of four million dollars. Writs of execution were issued and levied on the five drilling rigs. Two of the rigs were located in Brazos County, one was located in Robertson County, one in Dimmit County and one in Burleson County. The rigs in Robertson, Burleson and Dimmit counties were "stacked and not operating." The two rigs in Brazos County were operating. They were allowed to continue drilling and were not closed down. One of the two wells in Brazos County was well # 10.

At the time of the levy, rig # 10 was being operated by Spartan Drilling Company, for Canadian Commercial Bank. Spartan Drilling was an oil and gas well drilling contractor which owned or operated approximately 25 drilling rigs. The agreement between Spartan Drilling and Canadian Commercial Bank called for net profits to be split 60% to Canadian Commercial and 40% to Spartan. On October 8, 1982, Canadian Commercial contacted Moore and informed him that rig # 10 had completed drilling on a well in Brazos County and needed to be moved to a second well outside of that county. Appellant refused to allow removal of the rig to the new well site. Rig # 10 had been committed by Spartan to a drilling contract known as a "one to three well" contract. The contract could not be completed by reason of the appellants' writ of execution and refusal to release the rig. Canadian Commercial Bank complains that because of appellants' actions, it lost the contract.

■ It is well settled that the loss of anticipated profits occasioned by the tortious interruption of an ongoing concern is recoverable in damages. *Sawyer v. Fitts*, 630 S.W.2d 872 (Tex.Ct.App.—Fort Worth 1982, no writ). It is also true that the award of damages must be based on some competent evidence and not on mere conjecture. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943). The law requires only that the evidence be sufficient to enable the jury to estimate the loss or damage with reasonable certainty. Tom McGraw, Vice President of Canadian Commercial Bank, stated that "Rig 10 today, I believe it started a new well in Brazos County." That testimony is corroborated by James Campbell, Vice President of Finance for Spartan Drilling, Inc. Campbell testified that "We gained possession of Rig 10 approximately at the end of September—around October 1st." He went on to state that since Spartan had been operating Rig 10, it had produced gross revenues of $167,000, resulting in net revenues of $44,186 for the same period, being a daily earning rate of approximately $2,100. Campbell defined the term "rig utilization rate," and said that his company's utilization rate for this particular time period was 68%.

From the facts in the record, reasonable people could infer that Spartan came into possession of Rig #10 at approximately the end of September, and that the rig produced $44,186 in net revenue at the rate of $2100 per day. This would mean that Rig #10 had worked approximately 21 days between some time near the end of September and January 21, 1983, the date of Campbell's testimony. There are 112 days from October 1, 1982 to January 21, 1983. Subtracting 21 days from the 112 total days leaves 91 idle days. Multiplying the 68% utilization rate times 91 days leaves 61.88 days, which when multiplied by the daily earning rate of $2100 for Rig #10 equals $129,948. This final sum exceeds the $92,617.50 awarded by the jury. The amount of damages awarded by the jury to Canadian Commercial Bank was not as high as the maximum value testified to at trial.

█ The testimony of Tom McGraw and James Campbell, Vice President of Finance for Spartan Drilling is admissible and is ample and sufficient to sustain the jury's answer to issue six. We cannot substitute our judgment for that of the jurors. Accordingly, both appellant's points of error have been considered and are overruled. The judgment of the trial court is affirmed.