**BAY RIDGE UTILITY DISTRICT, et al., Appellants,**

v.

**4M LAUNDRY, et al., Appellees.**

**No. 01–85–0735–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 19, 1986.

Rehearing Denied July 17, 1986.

C. Charles Dippel, Charles R. Huber, Jr., Ronald E. Hood, Sears & Burns, Houston, for appellants.

Thomas W. McQuage, Barlow, Todd, Crews & Jordan, Galveston, for appellees.

Before HOYT, SAM BASS and DUNN, JJ.

## OPINION

HOYT, Justice.

This is an appeal from a judgment awarding damages of $593,164, attorney's fees, and permanent injunctive relief against appellant, Bay Ridge Utility District ("District").

Suit was initially brought by 4M Laundry and Robert Moody against the District complaining of a denial of constitutional guarantees under 42 U.S.C. sec. 1983, tortious interference with business and contractual relations, conspiracy to restrain trade, diminution in land value, and breach of contractual obligations. A settlement of all aspects of the case as pled, except damages, was effected by an agreed order entered July 13, 1984, dismissing with prejudice all claims for injunctive relief against the District and its board members individually. After a severance of the damage claims, a final judgment was entered dismissing the injunctive relief claims.

In November 1984, a second suit was instituted by 4M Laundry and Uniform Company ("4M") seeking to invalidate a rate order entered by the District on June 27, 1984, and seeking injunctive relief to enforce the settlement agreement entered in the first suit. This cause of action was consolidated for trial purposes with the damage claims in the first cause of action and with Robert L. Moody's claim for damages from diminution in the value of his land. At trial, pursuant to an assignment of all causes of actions to Transitional Learning Community ("TLC"), TLC was substituted as the beneficial plaintiff because all interest in the laundry and all of Moody's interest in his land within the District had been transferred to TLC. Judgment was entered on behalf of TLC, and the District now appeals.

## BACKGROUND

In 1981, 3R Trust (a trust set up by Robert L. Moody for his children) opened 4M for business in League City, Texas, as a washateria to service the residents of the Bay Ridge Subdivision. Moody's testimony indicated that the residents never really supported the washateria as he had hoped, and 4M turned to commercial accounts to generate business. Moody testified that when the washateria was established, the District assured him that it would provide ° 4M with all the water and sewer service necessary. Conversion from a washateria to a commercial laundry began in March of 1982, and by Spring of 1983, 4M was substantially a commercial linen business serving Galveston and Harris Counties.

During the first quarter of 1983, 4M's water consumption rose from 69,000 to 87,000 gallons of water per month, and for the remainder of 1983 its usage increased to approximately 180,000 gallons per month. At the time of trial 4M's consumption was approximately 35,000 gallons per day.

In April 1983, the District's plant operator noted the smell of a solvent or kerosene and a high pH in the plant. He observed that this high pH was destroying the bacteria necessary in the treatment process, thus, preventing the plant from properly treating the domestic sewage. The District notified 4M of this problem and directed it to install a pretreatment system to reduce the pH. After the installation of the pretreatment facility the problem did not cease, and the District by letter dated May 4, 1984, informed 4M that it would limit 4M's water supply to 127,000 gallons of water per month (its 1983 average supply) because the plant had been designed for domestic discharge only, and could not properly treat industrial discharge. After this notice of water limitations, suit for injunctive relief was brought by 4M to prevent the District from limiting 4M's water and sewer treatment supply.

The District has assigned 107 points of error. Sixty-three of the 107 points of error assert that there was either no evidence or factual insufficiency of the evidence to sustain the trial court's findings; 33 points of error challenge the trial court's conclusions of law and 11 relate to other matters.

■ The trial court found that Robert L. Moody's land was affected by the failure of the District to expand the treatment plant,

but concluded as a matter of law that no damages were proved. We note, however, that even if damages had been proved, no causal connection was ever established between the diminution in land value, if any, and the actions or inactions taken by the District. Because of this conclusion, we hold that Moody's cause of action was meritless.

The remaining causes of action for the trial court's consideration and for our review are 4M's claim that the District violated its civil rights, violated article 26.176 of the Texas Water Code, and that 4M is entitled to damages and attorney's fees.

In order to properly address each of appellants' points of error, we have grouped them according to subject matter. Six general topics will be discussed as follows: (a) Assignment of the Causes of Actions; (b) Civil Rights Violation Claim; (c) The Agreed Order; (d) Notice Under the Texas Open Meeting Act; (e) The Rate Orders; and, (f) The Damage Award.

## ASSIGNMENT OF THE CAUSES OF ACTION

In points of error 1–4, the District contends that it was reversible error for the trial court to permit TLC to proceed as plaintiff because the causes of action were not assignable as a matter of law. Appellant contends that a civil rights cause of action is personal to the party injured, and others may not sue to recover under it. *Jenkins v. Carruth*, 583 F.Supp. 613 (E.D. Tenn.1982).

The District concludes that the civil rights cause of action was personal to 4M, and because 42 U.S.C. sec. 1983 does not contain a provision stating that a cause of action under sec. 1983 survives the death of the injured party, the cause was not assignable, and TLC could not recover as a matter of law.

4M asserts that *any* cause of action may be assigned, and the suit may be brought by the equitable holder. *Citizens State Bank v. O'Leary*, 140 Tex. 345, 350; 167 S.W.2d 719, 721 (1942). Quoting from *Wolff v. Commercial Standard Insurance*

*Co.*, 345 S.W.2d 565, 568 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.), 4M asserts that "[t]he assignment of things in action is now the rule and nonassignability the exception. Practically the only classes of choses in action which are not assignable are those for torts for personal injuries, wrongs done to the person, ... and contracts of a purely personal nature, such as promises of marriage."

■ Whether a civil rights action under 42 U.S.C. sec. 1983 is assignable is determined by the law of the forum state. *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Carter v. Romines*, 593 F.2d 823 (8th Cir.1979). Under Texas law, in the absence of an express statutory provision to the contrary, a statutory cause of action is not assignable if it is personal to the one who holds it and would not survive his death. *Dearborn Stove Co. v. Caples*, 149 Tex. 563, 236 S.W.2d 486 (1951).

■ The District's assertion that 4M's cause of action under 42 U.S.C. sec. 1983 is nonassignable is based on misplaced reliance on decisions relating to civil rights violations causing injury to the person, rather than the business or property of the person. A cause of action subject to a private right of action under 42 U.S.C. sec. 1983 is fully assignable if it arises in connection with an injury to the plaintiff's business or property. *Nelson v. Knox*, 230 F.2d 483, 484 (6th Cir.1956).

In *Knox*, the plaintiff sued various city officials alleging that various actions of the city officials destroyed his business. Upon plaintiff's death, his executrix was substituted as plaintiff, and the district court dismissed the cause of action. The circuit court reversed the trial court and outlined the distinction between a civil rights cause of action that seeks damages for personal and individual harm as opposed to one that seeks damages for property rights. This reasoning has been followed by this Court in *Peniche v. Aeromexico*, 580 S.W.2d 152, 156–57 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Wolff v. Commercial Stan-*

*dard Insurance Co.*, 345 S.W.2d 565, 568 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.).

■ The District cites *First National Bank v. Hackworth*, 673 S.W.2d 218 (Tex. App.—San Antonio 1984, no writ), for the principle that a statutory cause of action that is personal is not assignable. We agree, when, as in *Hackworth* the question related to recovery of punitive damages for a personal claim, not a tort against property rights.

Finally, the District asserts that the nature of the cause of action challenging the rate orders of the District was essentially a declaratory judgment action and that such action required a justiciable controversy, i.e., the relationship of District and customer during the period of time service was rendered. Because TLC did not become a user of the District's services until it obtained ownership of the laundry on March 22, 1985, it could not complain of rates charged by the District against 4M prior to TLC's acquisition because TLC had no justiciable interest in 4M's rates at the time the rates were set.

■ 4M responded by citing Tex.Prop. Code Ann. sec. 12.014 (Vernon 1984), which provides that an interest in a cause of action on which suit has been filed may be sold, "regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing." So long as the original parties remain in the suit and the rights of the person who was plaintiff at the time of the commencement of the suit remain in issue, the assignment does not affect the justiciability of the cause of action. *See Fort Worth & Denver Railway Co. v. Ferguson*, 261 S.W.2d 874 (Tex.Civ.App.—Fort Worth 1953, writ dism'd.).

We sustain 4M's position that all of the causes of action asserted in the litigation under the name of 4M could be, and were legally and effectively conveyed to TLC by way of an assignment.

Points of error 1–4 are overruled.

Points of error 5 and 6 challenge the trial court's finding that the District is a municipal utility district. The evidence is legally and factually sufficient to support the trial court's finding. Points of error 5 and 6 are overruled.

CIVIL RIGHTS VIOLATION CLAIM

Points of error 7–16, 21–30, 37, 50–54, 58, and 60 challenge the trial court's findings of fact and conclusions of law that the District tortiously interfered with the contractual relations of 4M with its customers. Points of error 42–49 challenge the trial court's findings of fact and conclusions of law that the District seriously impaired and diminished the good business name of 4M, depriving 4M of its constitutional rights. Points of error 55–57 and 59 challenge the trial court's finding that the District deprived 4M of water and sewer service without due process and equal protection of the law.

Each of these points of error asserts that there was either no evidence or insufficient evidence to sustain the judgment. When both "no evidence" and "insufficient evidence" points of error are raised, an appellate court should rule upon the "no evidence" points first. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). If there is probative evidence, more than a scintilla, in support of the finding, the point will be overruled, and the judgment will be affirmed, unless a factual insufficiency point has also been raised and the trial court sustains it on the basis of a full review of the evidence. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 364 (1960); Garwood, *Insufficient Evidence on Appeal*, 30 Texas L.Rev. 803 (1952).

The District asserts that because the wastewater that 4M generated posed special treatment problems, the District was authorized by law to discriminate against the laundry. The District relies on language from section 26.176 of the Texas Water Code that provides that a local government that owns or operates a disposal system is empowered to require pretreat-

ment of waste prior to discharge to the system. Tex.Water Code Ann. sec. 26.176 (Vernon Supp.1986).

Additionally, the District contends that because property and liberty interests are created and defined by state law, rules, and regulations, then property and liberty interests are proscribed and limited by state law and local regulations. The District concludes that its decision to mandate that 4M construct a pretreatment facility was pursuant to the laws of Texas, was based upon the important state interest in clean water, was a reasonable exercise of the police power for the purpose of protecting the health and welfare of the state's citizens, and did not deprive 4M of any federally protected right, privilege, or immunity.

4M relies principally on 42 U.S.C. sec. 1983 in its claim for civil rights violations and damages. 42 U.S.C. section 1983 provides in pertinent part:

· Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ A cognizable claim under 42 U.S.C. sec. 1983 requires plaintiff to show that the "defendant has deprived [plaintiff] of a right secured by the 'Constitution and laws' of the United States and that the defendant acted 'under color of law.'" *Limuel v. Southern Gas Co.*, 378 F.Supp. 964, 966 (W.D.Tex.1974). An interest in a benefit provided by state law is protected by the fourteenth amendment. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Continuous service from a public utility established for the purpose of providing a service is clearly a right protected by 42 U.S.C. sec. 1983. *Limuel*, 378 F.Supp. at 966. We therefore hold that the type of claims asserted by 4M

represent justiciable causes of action under the Civil Rights statute.

The trial court found that (a) plaintiff had been assured an unlimited water supply, (b) the District had adequate capacity to provide wastewater treatment for the expanding needs of its users, and had funds to expand, (c) the District required plaintiff to construct a pretreatment plant in bad faith, (d) the District voted to limit the water supply to 4M and that such action was in bad faith and an attempt to shut 4M down, (e) no rational purpose was served by the actions of the District, (f) no notice was given to 4M of the water treatment capacity problems, and (g) all of the actions by the District in this regard were "animated" by dislike for the principals at 4M.

Based on these findings of fact, the court concluded as a matter of law that the District had tortiously interfered with the contractual relations of 4M and its customers, that 4M had been deprived of equal protection because it had been singled out as the customer whose water treatment supply would be limited, that 4M had been deprived of its good business name, that 4M's business had been seriously impaired and diminished, and that all of this was a violation of 42 U.S.C. sec. 1983.

"Where the law visits upon a governing body the duty to exercise its sound judgment and discretion, courts have no right to interfere so long as such body acts lawfully. If such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the courts end." *Inverness Forest Improvement District v. Hardy Street Investors*, 541 S.W.2d 454, 460 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

A district is under a duty to serve its customers without discrimination. *Id.* at 461. This duty, however, does not provide an absolute right to unlimited service and must be qualified by a district's greater duty to enact and enforce rules and orders designed to protect the entire system and its users, and if necessary, require pre-

treatment of waste prior to discharge to the system. Tex.Water Code Ann. sec. 26.-176 (Vernon Supp.1986).

Evidence that the District could provide 4M an unlimited water supply is undisputed. The dispute is about what to do with the wastewater being discharged. In this regard, the evidence shows that both 4M and the District agreed that the system was designed for domestic rather than industrial effluent. The evidence further shows that Moody, chairman of the board of trustees that operated 4M, who assisted in developing the District, knew the District's treatment capacity and treatment limitations. The evidence shows that 4M's water supply was never cut off or limited.

We have read the 14 volumes of testimony and find no evidence that the District acted in bad faith in its efforts to control and protect the treatment plant; there is no evidence that the District's actions were "animated" by dislike for the principals of 4M; and there is no evidence that the actions in reclassifying the washateria as a commercial laundry and developing rules to regulate it, were irrational and served no purposes.

In fact, the undisputed evidence shows that no funds were on hand at the time of trial, and that the bonds available for sale were unsalable. The District's refusal to discount the unsalable bonds cannot be challenged by 4M as a refusal to sell the bonds because the District is obligated to sell the bonds at the most advantageous price, within its discretion. *See* Tex.Rev. Civ.Stat.Ann. art. 1110f, sec. 4(g) and (p) (Vernon Supp.1986).

The legislative body of the District is the only authority that can decide to issue bonds, *see Lewis v. City of Fort Worth*, 126 Tex. 458, 89 S.W.2d 975 (1936), and that issue can only occur after a favorable vote by the property owners. Therefore, a wastewater treatment district cannot be forced by judicial decree to expand or provide a particular service to other customers not being offered to any customer. "A court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act." *Lewis*, 126 Tex. at 463, 89 S.W.2d at 978. Consequently, we hold that the trial court's findings of fact and conclusions of law relative to what the District could do, are judicially immaterial, because they constituted interference with the legislative process. *See* Tex. Const. Art. II, sec. 1.

In examining what the District did that was illegal or arbitrary and capricious that formed a basis for setting aside the District's action, the plaintiff must prove, and the trial court must find, that the discriminatory acts by the District were illegal, i.e., not authorized by statute, or that the District exceeded its authority, and that no rational basis existed for the action taken. *See City of Monahans v. State*, 348 S.W.2d 176 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.).

The evidence shows that the District discovered that a washateria had been converted into a commercial laundry, passed an order creating a commercial class of customers, and set out rules, regulations, and fees for commercial customers. This action obviously singled 4M out as the customer affected because it was the only commercial customer. However, we find that the actions taken by the District were not contrary to the statute, illegal, or arbitrary and capricious as a matter of law. Moreover, 4M does not state how the actions of the District were illegal or arbitrary and capricious except to say that it should be treated the same as residential customers. We reject this notion. It was not within the discretion of the District to regard 4M as a residential customer when in fact 4M was a commercial customer. Tex.Water Code Ann. sec. 26.176(a) (Vernon Supp.1986).

We, therefore, sustain points of error 7–13, 15, 21–30, 37, 42–54, and 58–60.

On the other hand, we overrule points of error 16, 55, 56, 57, and part of 14 because the District's decision to limit 4M

to 127,000 gallons of water per month bears no rational relationship to the District's decision to reclassify 4M as an industrial user. There is no evidence that the District considered what the needs of a commercial user are in light of its reclassification order and its capacity to dispose of industrial waste. Therefore, without a hearing in this regard, the District was without a sufficient basis to set a limitation on 4M's consumption and discharge of wastewater. The evidence shows however that the water limitation was never enacted, and therefore, no damages were sustained.

### THE AGREED ORDER

Points of error 62–64 and 81–84 challenge the court's finding that the District had operated the treatment plant in violation of the original design approval, by failing to properly operate, maintain, and expand the sewage treatment plant in accordance with that design.

We stated earlier that with limited exceptions the expansion of a sewage treatment plant falls within the province of its governing body, and a court can intervene only to correct an illegal or arbitrary act. *See Inverness Forest*, 541 S.W.2d at 460. We hold that the proper operation and maintenance of a treatment facility may be enforced by court order because proper operation and maintenance is mandated by statute. *See* Tex.Water Code Ann. sec. 26.121 (Vernon Supp.1986). However, a contractual agreement by a district with a private citizen to do that which it is legally obligated to do, places no additional responsibility on that district and can be enforced only by the State Water Commission or the local government through civil penalty, criminal prosecution, and injunctive relief. *See* Tex.Water Code Ann. sec. 26.121–124, 26.133 (Vernon Supp.1986); *see also Fan-Reed, Inc. v. Upper Neches River Municipal Water Authority*, 651 S.W.2d 356 (Tex. App.—Tyler 1983, no writ).

4M did not see fit to implead the State Water Commission into this suit as a party therefore, the trial court's findings of facts and conclusions of law relative to points of error 62–64 and 81–84 are judicially immaterial, and we sustain these points.

Points of error 65, 66, 69, 70, 71, 75, and 77 challenge the trial court's finding that the District refused to comply with the agreed order to acquire an easement, that it did not have good cause to refuse, and that such refusal by the District was a material breach of the agreed order. Points of error 85, 88, and 90 challenge the trial court's conclusion of law that the acquisition of the easement would serve a public purpose.

A water district may exercise eminent domain power to acquire right-of-ways through private land, if the acquisition is necessary for improvements in the district. Tex.Water Code Ann. sec. 56.119 (Vernon Supp.1986). "The constitution itself protects private property from any taking except for the public use...." *Borden v. Trespalacios Rice & Irrigation Co.*, 98 Tex. 494, 512, 86 S.W. 11, 15 (Tex.1905). Any citizen whose property is sought by right-of-way acquisition is entitled to a hearing and the question of whether the intended use is a public one is resolved through that process. *Id.* Without joining the property owners in this aspect of the suit, the issue of whether a particular property owner's land is being taken for public use is not binding and that issue could be relitigated at the time of the taking.

In the case before us, the record reflects that the agreed order between the District and 4M obligated the District to acquire an easement for 4M *to the extent it was legally able to do so.* The evidence showed that the easement sought was to cross property owned by Brighton Homes, Inc. and that Brighton Homes was unwilling to concede the land necessary because it would not be allowed access to the proposed sewer line. The evidence further shows: (1) that the policy of the District was to reimburse developers after they had completed development of a wastewater facility, not pay for the development in advance; (2) that 4M was offered reimbursement for its proposed development; (3) that the sewer line

placed in the easement would be the property of 4M; and (4) that the District was without funds to make the acquisition at the time negotiations ceased.

A "public use" concerns the customers of the entire District, as distinguished from a particular individual. *Leathers v. Craig*, 228 S.W. 995 (Tex.Civ. App.—Galveston 1921). Property is taken for a public use only when there results to the public some definite right or use in the undertaking. *Borden*, 98 Tex. at 509, 86 S.W. at 14.

We hold that the evidence presented by 4M was insufficient to establish as a matter of law that the proposed taking was for a public purpose because the sewer line to be placed in the easement would be private property. *Leathers*, 228 S.W. at 998. Furthermore, it appears at the outset that the taking as proposed by 4M would violate the fourteenth amendment because the taking would deny Brighton Homes due process and equal protection of the law. *See Hairston v. Danville & W.R. Co.*, 208 U.S. 598, 28 S.Ct. 331, 52 L.Ed. 637 (1908).

Finally, without the funds to compensate Brighton Homes for the property taken, a condemnation proceeding would violate the Texas Constitution. Tex. Const. art. 1, sec. 17; *see also Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1961).

Points of error 65, 66, 69, 70, 71, 75, 77, 85, 88, and 90 are sustained.

Points of error 67, 68, and 85 challenge the trial court's findings that 4M made a good faith effort and substantial progress toward obtaining approval for its sewage treatment plant within the agreed 180–day period and that the District did not have good cause to refuse an extension of time to secure the approval.

Whether 4M made a good faith effort and substantial progress toward acquisition of its sewer treatment permit is immaterial because the District has a duty, within its limitation, to supply fresh water and sewer treatment to 4M so long as 4M requires it and pays for it. *Inverness Forest Improvement District*, 541 S.W.2d at 461.

In this regard, points of error 67, 68, and 85 are overruled.

Points of error 72, 73, 74, 76, and 85 challenge the trial court's findings that the District did not have good cause to refuse to support the application for TLC's private treatment facility and that such failure constituted a breach of the agreed order.

The facts do not indicate that the District opposed or attempted in any respect to obstruct the application of TLC. In fact, the evidence shows that the District was unaware that the application for the permit was being sought by TLC. All of the District's communications had been with 4M and 3R Trust. The evidence further shows that all during the period when TLC sought a sewer permit from the State, 4M and 3R Trust were actually challenging the renewal of the District's permit.

What the District was expected to do in support of TLC's application was not stated in the agreed order, and no testimony revealed 4M's expectations; nor did the trial court's findings of fact and conclusions of law enlighten us. Because there is no evidence that the District was required and failed to support TLC's application for wastewater permits, we sustain points of error 72, 73, 74, 76, and 85.

Points of error 78, 79, 80, 84, 87, 89, and 91 challenge the trial court's finding that 4M was entitled to injunctive relief. After the agreed order was entered dissolving all injunctive relief, 4M proceeded with a second claim for injunctive relief alleging that the District would not grant it an extension of time to secure a sewer permit and was going to cut 4M's water supply shortly.

The District argues that the agreed order dismissed all claims for injunctive relief, was res judicata, and operated to bar those portions of the final judgment in the case granting 4M injunctive relief for specific performance of the terms of the agreed order. It further contends that 4M could

only sue for damages for breach of the agreed order.

■ Only a final judgment may be pleaded as res judicata. *Brown v. Singer Sewing Machine Co.*, 352 S.W.2d 306, 308 (Tex.Civ.App.—Austin 1961, no writ). For a judgment to be final, it must determine the rights of the parties and dispose of the entire controversy and all issues in the case. *County of Harris v. Black*, 448 S.W.2d 859, 860 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ).

*Texas Crushed Stone v. Weeks*, 390 S.W.2d 846, 850 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.), holds that a trial court has the power to set aside an interlocutory judgment at any time prior to entry of the final judgment, and the interlocutory judgment has no limiting effect on the final judgment actually entered. Similarly, the agreed order had no effect on the final judgment entered in this case. Points of error 78, 79, 80, 84, 87, 89, and 91 are overruled.

Points of error 86, 92, and 93 cite allegations regarding attorney's fees arising from breach of the agreed order between 4M and the District. The District contends that the trial court erred in granting 4M an attorney's fee under Tex.Rev.Civ.Stat. art. 2226 (Vernon 1971) *repealed by* Act of Sept. 1, 1985, ch. 959, sec. 9(1), 1985 Tex. Gen.Laws 7218; (recodified in Tex.Civ. Prac. & Rem.Code, sec. 38.001 (Vernon Ann.1986)); and further in failing to grant the District an attorney's fee based on its counterclaim for past due water bills.

■ 4M's third cause of action alleged two violations by the District: (1) the District refused to extend the agreement to continue supplying 35,000 gallons of water daily; and (2) the District failed to act in good faith to secure the necessary easement for 4M. We reject both of these alleged violations. 4M sought and received a preliminary injunction against the District prior to the expiration of the agreement; therefore, damages for attorney's fees, if warranted, would be limited to the time expended in seeking the preliminary injunction. To this limited degree, we sustain the trial court's finding that 4M is entitled to an attorney's fee, and we sustain the trial court's findings in findings of fact 6(a), (f), and part of (i) and conclusions of law 36, 37, and 38. However, based upon our prior holding herein, regarding the alleged failure of the District to acquire an easement across private property, we overrule the trial court's findings that the agreed order was breached; therefore, no attorney's fees are warranted.

Points of error 86, 92, and 93 are sustained.

## NOTICE UNDER THE TEXAS OPEN MEETING ACT

In points of error 17, 18, 19, 31–36, 38–41, 104, and part of 14, the District challenges the court's findings that the District's adoption of an industrial policy affecting 4M's business was not in compliance with the Texas Open Meeting Act and that the waste policy was implemented to maintain the residential nature of the Bay Ridge Subdivision. Whether the waste policy was implemented to maintain the residential nature of the subdivision is judicially irrelevant where the evidence shows that the wastewater system was designed for residential users. Courts may, however, review questions of lack of compliance with the Texas Open Meeting Act. Tex.Rev.Civ. Stat.Ann. art. 6252–17 (Vernon Supp.1986).

■ Section 3A of the Texas Open Meeting Act requires that a governmental body provide notice of the *subject* of its meetings. *Id.* This requirement is necessary because it assures the public an opportunity to be informed concerning the transaction of public business. Whether notice of the subject matter of a public meeting has been properly posted or noticed is resolved by way of the substantial compliance rule. *Stelzer v. Huddelston*, 526 S.W.2d 710 (Tex.Civ.App.—Tyler 1975, writ dism'd); *McConnell v. Alamo Heights Independent School District*, 576 S.W.2d 470 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

The trial court found that the notice of the meeting for the rate order change did not reasonably apprise the public of the subject matter to be considered and that 4M specifically did not receive notice regarding the meeting. It concluded that this lack of notice violated the Texas Open Meeting Act and further violated 4M's right to due process of the law and equal protection of the laws, and that the orders issued as a result of the meetings were void.

The District contends that the notice indicating that a rate order was to be amended or adopted was sufficient notice to alert readers that an industrial waste policy may be adopted as part of the rate order. Based on this contention, it concludes that the trial court erred in finding and concluding that the notice was inadequate, and in granting relief for violation of civil rights based upon such finding and conclusion.

█ The facts indicate that the District issued a notice of a public meeting of the Bay Ridge Board for February 22, 1984. The notice reflected an agenda item, "Amend Rate Order." During the meeting, the Board adopted an industrial waste policy prohibiting the discharge of certain effluents into the sewer system prior to preliminarily treating the effluent if deemed necessary by the District.

The District issued another meeting notice for its May 3, 1984, meeting. That notice reflected an agenda item, "executive session." At this meeting the District met with its attorneys and took action to enforce the terms of a letter that its attorney had forwarded to 4M earlier. The letter that was the subject of the executive session gave 4M notice of an intended restriction of 4M's water usage to 127,000 gallons per month.

4M contends that the notices of the meetings provided absolutely no hint of the Board's intentions, but were deliberately disguised by them. 4M cites *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex.1975), and *Porth v. Morgan*, 622 S.W.2d 470, 475–76 (Tex.App.—Tyler 1981, writ ref'd n.r.e.), as

authority that the trial court's action in invalidating the District's orders was proper because the notice requirement of the Texas Open Meeting Act had not been met.

In *Lower Colorado River Authority*, the Texas Supreme Court invalidated the River Authority's attempt to raise rates when its notice of board meeting made no reference to a rate increase. In *Morgan*, the court of appeals invalidated an election of a director to a hospital board at a closed executive session when the election of a board member was not stated as an agenda item.

The facts in this case are distinguishable from both *Lower Colorado River Authority* and *Morgan*. Here, the District already had in place a rate order that included 4M. The original rate order was not challenged in this proceeding; therefore, its validity is not in question. When the District issued notice that it intended to *amend* the rate order, no special notice to 4M was required. Neither was an elucidation of each and every conceivable amendment to the rate order necessary to a proper posting and notice.

The Constitution requires only that the subject matter of the act be included within the title, and this requirement is met when amending a policy by reference to the original subject matter. *See Grimes County Taxpayers Association v. Texas Municipal Power Agency*, 565 S.W.2d 258, 272 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

We hold that the caption or title indicating "Amend Rate Order" was sufficient to give reasonable notice of the subject matter of the topics to be considered, and that the notice did not violate the "due process" and "equal protection" rights of 4M. Furthermore, the District had no duty to personally notify 4M of its intended meetings, so long as notices of regular meetings were posted and held. During this period of time, 4M and the District were very involved in negotiations regarding the effluent that 4M was discharging. 4M was fully aware of the District's meeting schedule because it had attended meetings in the

past. We hold that the District's actions were not illegal, arbitrary or capricious.

Points of error 14, 17, 18, 19, 31–36, 38–41, and 104 are sustained.

## THE RATE ORDERS

Points of error 94–98 and 100–103 challenge the court's finding that the District's rates were based on inaccurate factual assumptions, failed to apply considerations required by statute, and were unreasonable, arbitrary, capricious, and invalid.

Until February 1984, 4M had paid the same water and sewer rates applicable to domestic users. In February 1984, the District adopted a rate for all users of a $10 charge on the first 5,000 gallons and $.05 on each 1000 gallons over that amount. In June 1984, the District distinguished 4M from residential users and adopted an industrial rate for commercial users. The rate was computed by dividing the 150,000 gallons per day capacity of the plant by the commercial user's gallons per day allowance. That fraction was multiplied by the District's operating budget, of $135,000, to yield a flat monthly rate of $2,625 for 4M. In January 1985, the District passed another rate order increasing all customers' rates by 20 percent across the board. This increase resulted in 4M's monthly rate increasing to $3,150 per month.

Texas Water Code, Section 26.176(b) provides in pertinent part that:

> the charges and assessments shall be equitable as between all users and shall correspond as near as can be practically determined to the cost of making the waste disposal services available to all users and of treating the waste of each user or class of users.

The substantial evidence rule provides that if a rule or order promulgated by some agency exceeds its statutory authority or conflicts with the statute or has no reasonable relation to the statutory purpose, it will not stand. *See, e.g., Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 892–94 (Tex.1969).

■ The District contends that where reasonable minds could differ upon the facts or rates to be charged, then substantial evidence exists in support of the rate orders. We agree. It is not unreasonable nor arbitrary to set a flat rate. 4M was billed on a flat rate system prior to the District classifying it as a commercial or industrial user. To allow 4M to be billed as a residential user even though it was not could subject the District and its trustees to such charges from other customers.

The record reflects that 4M's rate expert conceded that reasonable minds could differ on the formula for arriving at an industrial rate. He further conceded that his formula did not include all of the ingredients that were peculiar to the Bay Ridge District. His disagreement with the District's formula was its percentage of use to the District's capacity in relationship to the District's budget.

■ We hold that the trial court could not change the District's formula simply because another formula would be more desirable. *Schenker v. City of San Antonio*, 369 S.W.2d 626 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). A trial court's authority in this regard is limited to illegal, unreasonable, and arbitrary acts. 541 S.W.2d at 460. There is no evidence that the formula adopted was illegal, unreasonable, or arbitrary. The fact that the District had only one industrial user does not preponderate the evidence in favor of 4M.

Points of error 94–98 and 100–103 are sustained.

Points of error 105–107 allege that the trial court erred in awarding Moody attorney's fees for pursuing his civil rights claim although no finding was made that his rights were violated, and further erred in denying the District's counterclaim for unpaid utilities services and attorney's fees.

[24] A district court has no authority to cancel the charges for water used by a customer. 4M is only entitled to water and

sewer service when it pays for it. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699.

The trial court in this case permitted the payments for water and sewer assessed 4M to be escrowed in the registry of the court. We hold that this procedure did not entitle 4M to water and sewer services because the procedure did not require payment of that portion of the bill not in dispute. 4M has no constitutional right to water and sewer services that it does not pay for. *Limuel,* 378 F.Supp. at 966.

Additionally, we hold that the District is entitled to present evidence on attorney's fees because 4M refused to pay the undisputed portion of the water and sewer bill.

We sustain points of error 105–107.

### THE DAMAGE AWARD

██ Point of error 20 challenges the trial court's finding that the District's conduct warranted an award of $593,164 in damages in favor of 4M. Point of error 21 alleges that the trial court erred in failing, upon request, to find actual damages for each element of the damage award.

The District contends that the damage award was improper because 4M agreed to the 35,000 gallon limitation, so it cannot complain about damages to its business operations for future growth based on the limitations that it agreed to. 4M contends that it is entitled to damages for its losses even though the amount is not susceptible to exact calculation. 4M cites *Moore v. Canadian Commercial Bank,* 672 S.W.2d 324 (Tex.Civ.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *White v. Southwestern Bell Telephone Co.,* 651 S.W.2d 260 (Tex.1983); and *Cain v. Fontana,* 423 S.W.2d 134 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.).

We reject this thinking for two reasons. First, these cases generally rely upon past profits as one of the ingredients in calculating future profits. 4M did not prove any past profits, and in fact, testified that 4M was still trying to break even. Second, our holding that there were no civil rights or "due process" and "equal protection" viola-

tions renders the award of damages for interference with loss of future business, damage to business relationships, business growth, and cost of the pretreatment facility moot.

After carefully reviewing over 2800 pages of testimony and arguments to the court, we find that no damages for past profits or loss of business were proved. Without proof of past profits, the trial court could only speculate on what future profits would be. Testimony of possible substantial increases in weekly income is mere speculation and does not establish with specificity any past or future profits.

We sustain points of error 20 and 21.

We also sustain points of error 60 and 61, which assert that the trial court erred in failing to find that the civil rights cause of action was frivolous. There is no constitutional right to continuous water service where the customer refuses to pay the undisputed portion of the bill. *See Limuel,* 378 F.Supp. at 966.

We affirm the trial court's judgment against the District that the actions by the District to limit treatment of wastewater from 4M to 127,000 gallons of wastewater per month after reclassifying 4M an industrial user were arbitrary and capricious. We sever 4M's cause of action for attorney's fee relative to the temporary restraining order from the main cause, and remand that cause of action along with the District's request for attorney's fees, to the trial court for a new trial. We reverse the remainder of the trial court's judgment and render judgment that the District recover from 4M the sum of $24,675 for water and sewer services through March 1985, and the further sum of $3,150 per month from and after April 1985, until such rate is changed or service is terminated, together with prejudgment interest at 6% on each payment commencing the month following the month that the payment was due.