## PRATLEY v. SHERWIN–WILLIAMS CO. OF TEXAS.

### No. 2769.

Court of Civil Appeals of Texas. El Paso.

Jan. 19, 1933.

See, also (Tex. Civ. App) 21 S.W.(2d) 321; (Tex. Com. App.) 36 S.W.(2d) 195.

Edward G. Wallace, D. A. Frank, Pat Howe, and Allen & Allen, all of Dallas, for appellant.

Hawkins Golden, Sam A. Leake, W. T. Henry, and Harold H. Young, all of Dallas, for appellee.

PELPHREY, C. J.

In the afternoon of November 20, 1925, a truck belonging to appellee, and being driven by Bentley Barnett, collided with a car belonging to J. T. Jones near the intersection of Williams and Henry streets in the city of Dallas. Immediately after the collision, appellee's driver began making inquiries of the bystanders as to what they thought of the collision; that the driver inquired of a man by the name of James as to what he thought of the situation, and James advised appellee's driver to let the insurance company settle the matter. The driver then asked appellant for his opinion, and upon appellant telling him he thought the same as Mr. James, the driver became angry, stepped to the truck, took from it a pair of brass or iron knucks or some other hard instrument, and assaulted appellant, greatly injuring him.

Appellant filed this suit to recover $26,000 damages from appellee.

The trial court sustained a general demurrer to appellant's petition and, upon his refusal to amend, dismissed his suit.

In view of the action of the trial court, we shall here quote the material portions of the petition:

"6. That while your plaintiff was standing in the street near the scene of the said collision and without anything being said or done by plaintiff, the defendant's said driver began to make inquiries of the bystanders as to what the bystanders thought about the said collision, as it was part of his duty as driver of said truck when a collision took place to obtain the names of witnesses and make a report thereof to his employer, the defendant herein; that as a part of his said duty the said driver was making such inquiries and attempting to make some arrangements to have said truck moved and determine the respective liabilities of the defendant and the other car which was in the collision.

"7. That in order to obtain evidence and the names of the witnesses favorable to the defendant, the said driver and agent of the defendant made inquiries of several persons in the vicinity as to what each saw and what his opinion was as to the liability of the respective drivers, and what should be done in regard to said collision; that it was among the duties and within the general scope and apparent scope of the employment of said driver of defendant to look after defendant's said truck and obtain the names of witnesses and statements, if possible, from the same favorable to the defendant."

"9. Immediately upon receiving said answer from the said James, the defendant's said driver asked the plaintiff what he thought about it, meaning thereby to find out whether or not plaintiff would make a favorable witness for the defendant. This was the first word that had passed between plaintiff and defendant's said truck driver; that plaintiff merely remarked to defendant's said truck driver that he was of the same opinion as expressed by Mr. James, intending to convey to the defendant's said driver that in the opinion of the plaintiff the defendant's said driver was entirely to blame for the collision; that immediately thereafter the defendant's said driver seemed to become infuriated and stepped back behind his truck and took from his pocket or from said truck a pair of brass or iron knucks or some other hard instrument, the exact nature of which is unknown to plaintiff, and, without any warning whatsoever stepped up to plaintiff and proceeded to assault and strike plaintiff in the face and head, causing the injuries hereinafter set out; that the said assault was made upon the plaintiff without any provocation whatsoever other than as before stated and was made upon the plaintiff because of the fact that his answer to the driver's request for information as to what he thought about said collision was unfavorable to the defendant and was not such testimony as defendant's said driver was seeking, and said blow or blows was struck by defendant's said driver while in due course of his employment and in pursuit of his duty to obtain information and obtain the names of witnesses favorable to the defendant." .

After detailing the injuries inflicted by appellee's driver, his petition reads:

" * * * That as a result of said injuries, he lost time from his work and had his earning capacity decreased, and same will be decreased for all time to come; that he was earning One Hundred and Twenty-five ($125.00) Dollars per month at the time of said accident, and would have been promoted and earned a larger amount if it had not been for the injuries sustained; that he suffered great pain and mental anguish and has had his body weakened and his efficiency decreased, and that the said injuries are permanent; that as a result of said injuries and the said damages before set out, he has been damaged in the sum of Twenty-five Thousand ($25,000.00) Dollars, for which the defendant is liable."

"12. That defendant was negligent in addition to the matters hereinbefore set out in that it employed and kept in its employ said driver who was a man of ungovernable temper, a fighter, a dangerous character, a hot headed man, a person of unconscionable principles in reference to the welfare of his fellowman, a reckless man when excited, and a quarrelsome man, and that the disposition of the said driver was known to the defendant, or by the use of ordinary care could and should have been known to the defendant long prior to the date of the assault upon plaintiff, and was further negligent in that the said agent and servant of the defendant, in the due course of his business, and while acting within the apparent scope of his authority to collect and obtain evidence in its behalf favorable to itself in regard to said collision before referred to, assaulted and injured plaintiff as before stated."

Appellant first contends that the trial court erred in sustaining the demurrer because of its allegations in paragraph No. 12, in which he charged appellee with negligence in employing and keeping in its employ the truck driver after his nature was known or should have been known to it.

Appellee counters with the contention that said paragraph alleges no cause of action because there is no allegation therein that the negligence of appellee in employing and retaining the truck driver in its employ was a proximate cause of appellant's injuries.

■ In a suit to recover on account of negligence, the petition must show that the defendant's alleged negligence was the sole cause of the injury, or that it contributed thereto. 45 C. J. § 666, pp. 1093, 1094.

■ However, where facts are alleged which show a causal connection between the alleged negligence and the injury, the petition need not expressly allege that the negligence was the proximate cause of the injury. 45 C. J. § 668, p. 1095; Uvalde v. Stovall (Tex. Civ. App.) 279 S. W. 889; Canyon Power Co. v. Gober (Tex. Civ. App.) 192 S. W. 802.

■ The allegations here do not fall within the exception, and the trial court's action, in so far as the paragraph mentioned is concerned, presents no error.

The question as to whether under the facts as pleaded appellee would be liable to appellant is more difficult.

■ It was originally the rule that the master was not liable for damages resulting from the willful, wanton, or malicious acts of his servant unless done by his express direction or with his assent, although the act was committed within the line of the servant's duties. But now in almost all jurisdictions it is well settled that the master is liable for the willful or malicious acts of the servant done in the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. 39 C. J. § 1487, pp. 1292, 1293; 18 R. C. L. § 256, pp. 799, 800; Texas & N. O. Railway v. Parsons (Tex. Civ. App.) 109 S. W. 240, affirmed 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857.

The following rule as to the liability of the master for damages arising from an assault and battery committed by the servant is laid down in 39 C. J. § 1506, on page 1306: "Applying the doctrine of respondeat superior especially in its application to cases of willful, wanton and malicious injury, a master is liable to a third person on whom an assault and battery is wrongfully made by his servants while acting within the scope of their employment, that is, whenever the nature of the employment authorizes the servant to use force, and he improperly exercises such authority against a person who is not in fault, or uses more force than the circumstances of the case require."

18 R. C. L. § 263, p. 807, has the following to say relative to liability in such cases: "The liability of an employer for an assault and battery committed by an employee is to be determined with a view to the character of the business conducted. If the assault can be said to have been within the scope of the employment, the employer will be held liable; but if the employee's act was foreign to the service in which he was engaged the employer will not be held accountable."

Our Supreme Court, in the case of International & G. N. Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 1040, in discussing a charge of the court where the railway company was sought to be held for damages resulting from a brakeman putting appellee off a freight train, said: "To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary of his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority conferred upon the servant must, in general, depend upon the nature of the service he is engaged to perform, and the circumstances of the particular case."

In St. Louis S. W. Railway v. Mayfield, 35 Tex. Civ. App. 82, 79 S. W. 365, 367, the court said: "A master can only be liable for the willful and deliberate wrongs committed by the servant when they are done on his account, or for his purpose. To hold the master liable, the act must be done within the scope of the general authority of the servant. It must be in furtherance of the master's business, and for the accomplishment of the object for which the servant was employed."

See, also, I. & G. N. Railway v. Cooper, 88 Tex. 607, 32 S. W. 517.

In G., H. & S. A. Railway v. Currie, 100 Tex. 136, 96 S. W. 1073, 1074, 10 L. R. A. (N. S.) 367, the court held that an engine dispatcher, having charge of the engines and machinery in a round house, and handling a hose conveying a blast of compressed air, provided to work certain machinery, but which, as an experiment, he was using to extinguish fire in an engine, who turned the air blast, in sport, upon the person of an engine wiper, inflicting injuries, was not engaged in the employer's service. The court said: "Let it be conceded that in holding the hose in readiness to put out any fire that might again flare up, Nicholls was performing a duty as servant, and that had he, while thus holding it, or in attempting to use it for the purpose for which it was held, negligently turned it against one of the other employees, his negligence would have been imputable to his employer as incidental to the effort to do that which was in the line of the servant's duty. It may be further conceded that if, in directing the hose at a fire to put it out, he had also struck with it one of the other servants, either to make him get out of the way, or for some other purpose, the motive thus partly influencing his act towards such other would not deprive it of its legal character, as done in the master's business. It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master or be regarded as the personal tort of the servant alone. It is now settled, in this state at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty, and in the prosecution of the master's work. But, when he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such actions."

Bearing in mind that the question of whether an act done is within the scope of the servant's employment is usually one of fact and therefore to be, ordinarily, determined by the jury, yet we have concluded that the petition stated no cause of action.

In other words, the facts alleged, conceding them to be true, would not warrant a recovery against appellee. It is clear, we think, that the assault here complained of was not committed in line of the truck driver's duty or in the prosecution of the mas-

ter's work, but, rather, that he in committing the assault went entirely aside from the furtherance of appellee's business.

Appellant cites us numerous cases where storekeepers, innkeepers, saloonkeepers, express companies, and railway companies have been held liable for assaults upon customers by employees. An examination of those cases will reveal that the liability was based upon a breach of duty owed the customer and passenger; therefore, they can have no application here.

To hold with appellant here would be to say that every employer would be liable for damages to any person who might be assaulted by his employee where the meeting was occasioned by the employee's duties.

The judgment of the trial court is affirmed.