See also 770 F.Supp. 1164.

**E. Sven WALLSTEN, et al., Plaintiffs,**

v.

**INTERNATIONAL BANK OF
COMMERCE OF LAREDO,
Defendant,**

v.

**E. Sven WALLSTEN, et al., Counter–
Defendants and Third–Party
Defendants.**

**Civ. A. No. L–88–65.**

United States District Court,
S.D. Texas,
Laredo Division.

Oct. 23, 1990.

Horce C. Hall, Alberto Alarcon, Laredo, Tex., Andrew B. Krafsur, Richard B. Perrenot, Victor F. Poulos, El Paso, Tex., for plaintiffs.

Robert D. Daniel, Michael D. Conner, Houston, Tex., Carlos D. Castillon, Freeman & Castillon, Laredo, Tex., for defendant.

Andy A. Tschoepe, II, Cox & Smith Inc., San Antonio, Tex.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending are three Motions for Partial Summary Judgment by Defendant International Bank of Commerce (IBC). Two of these motions pertain to Plaintiff Sven Wallsten, contending no proximate causation (filed January 19, 1990) and payment (filed January 19, 1990) as defenses to Wallsten's claims. The third motion asserts a lack of damages against the claim of Plaintiff Interval Casa de Cambio, S.A. de C.V. (Interval) (filed January 23, 1990). Also, Plaintiff Interval has filed a Motion for Partial Summary Judgment against Defendant IBC, claiming that IBC lacked authority to transfer funds between Plaintiffs Interval and Wallsten's accounts (filed February 27, 1990).

■ *Defendant IBC's Motions for Partial Summary Judgment—No Proximate Cause/Payment.* It is clear that the parties maintain manifestly divergent views of the facts relevant to these two motions.

IBC alleges that Plaintiff Wallsten delivered on April 13, 1988 to Abraham Neiman in Mexico City Check No. 712 drawn on NCNB–Texas for $250,000.00 by Horst Von Soden. During transit from Mexico City to Nuevo Laredo, the check, destined for deposit in the Laredo office of IBC, was lost. On April 22, 1988, Mario Lopez of IBC–Laredo contacted Plaintiff Wallsten and gave him notice that the check was lost. IBC further alleges that on April 28, 1988, Plaintiff Wallsten wrote a letter to Von Soden asking him to stop payment on Check No. 712. On May 16, 1988, Van Soden entered a stop-payment order on Check No. 712. Subsequently, when IBC attempted to collect Check No. 712 from NCNB–Texas, using a microfilm copy of the check, NCNB–Texas denied payment due to the stop-payment order. On June 15, 1988, Wallsten wrote Von Soden thanking him for "having received the transfer" of $250,000.00. Additionally, IBC asserts that a payment received by Wallsten from Von Soden on June 17, 1988 of $50,000.00 was in partial payment of the funds represented by the missing check.

In summary, IBC contends that after Check No. 712 was lost, Wallsten arranged for an alternative payment of the $250,000.00 directly from Von Soden. IBC thus concludes that Wallsten sustained no damages due to the lost check and that Wallsten is seeking double compensation in suing IBC. Alternatively, IBC contends that Wallsten's request to stop payment of the check prevented IBC from collecting it.

Plaintiff Wallsten alleges a very different set of facts. Wallsten contends that he deposited the check with Neiman on April 13, 1988, in Mexico City. Wallsten contends that his employee, Perla Arroche, on his behalf called IBC–Laredo on April 26 to inquire why the $250,000.00 check had not appeared on Wallsten's statement of account at IBC. Wallsten contends that there was no answer to this inquiry. In early May, Wallsten contends that again, through Ms. Arroche, he inquired about Check No. 712 and was assured that any problems with it would not result in an overdraft on his account in Laredo. Wallsten asserts that, in the second week of June 1988, IBC finally acknowledged the loss of Check No. 712. Subsequently, Wallsten was in communication with Von Soden. They mutually agreed that a stop-payment on the check would be prudent.

Von Soden requested that Wallsten send him a letter backdated to April, asking for a stop payment order. Wallsten agreed, claiming ignorance of the fact that Von Soden had already issued such an order in May. Wallsten further claims that the letter of June 15, 1988 was written at Von Soden's request to thank him "in advance" for payment of $250,000.00 but that the money was never paid. He offers a contrasting translation of his June letter, which was written in Spanish. Wallsten does concede later part payment of $50,-000.00.

Clearly, the ultimate viability of Wallsten's claims depends on which view of the facts is accepted. Both sides have produced at least some evidence in support of their contrasting factual scenarios. If Wallsten's view is accepted, delaying tactics by IBC denied him critical time within which to collect on Von Soden's check, which was admittedly lost by IBC. In contrast, IBC's view of the facts would indicate that Wallsten either has been fully satisfied by a side settlement with Von Soden or else effectively blocked IBC from collecting the check by requesting a stop payment order in April. Because there appear to be genuine disputes of material facts, Defendant IBC's Motions for Partial Summary Judgment as to proximate causation and payment are DENIED.

■ *Defendant IBC's Motion for Partial Summary Judgment—No Damages.* This motion concerns the claim of Plaintiff Interval over Defendant IBC's treatment of Check No. 755 from Von Soden to Plaintiff Interval. The check, written for $140,-000.00, was presented to NCNB–Texas, the drawee bank, on June 17, 1988, and returned for insufficient funds to IBC on June 24. Upon return of the check, IBC sent a facsimile copy to Interval. *Affidavit of Dennis Nixon,* January 19, 1990, at 3. It appears undisputed that on or about June 21 or 22, 1988, Von Soden fled Mexico with virtually all of his personal assets, and his present whereabouts are unknown. On June 28, 1988, Interval filed a criminal complaint against Von Soden in the Mexican courts, using the facsimile copy of Check No. 755. Interval asserts that the original returned check was not received by them from IBC until August 30, 1988, and this delay harmed their effort to collect from Von Soden.

The summary judgment evidence reflects that Interval cannot have been harmed in its efforts to seek redress from Von Soden by any action or inaction by IBC. IBC immediately sent a facsimile copy of the check to Interval. By then, Von Soden had already absconded. Further, IBC's evidence indicates that, had Interval filed a civil suit under Mexican law, a photocopy of Check No. 755 would have been sufficient. *Affidavit of Carlos Valencia Barrera,* January 22, 1990.

Plaintiff Interval did not respond to this evidence. Instead, it relies solely on an affidavit by Wallsten that he "would have never given value in exchange for" Check No. 755 but for the representation by IBC that it would recognize the deposit of Check No. 712 and not overdraft Wallsten's account. Wallsten concludes that these representations "made me believe that IBC was assuming all the risks in the collection of Check 712."

This is a non sequitur. While the nature of the communications and assurances between IBC and Wallsten as to Check No. 712 are in dispute, any reliance by Wallsten on these assurances would not justify reliance by Interval as to Check No. 755. The alleged assurances by IBC were made specifically as to Check No. 712 and concerned Wallsten's personal account at IBC. The representations were made because IBC apparently recognized some responsibility for losing Check No. 712. How this relates to Check No. 755 is a mystery. Moreover, Check No. 755 was payable to Interval, not Wallsten, and deposited in an entirely separate account. Indeed, in its own motion for partial summary judgment as to the transfers between the Wallsten and Interval accounts, Interval adamantly contends that these accounts were separately held by separate customers of the bank.

Defendant IBC's Motion for Summary Judgment as to Plaintiff Interval's claims

based on Defendant IBC's delayed return of Check No. 755 in the amount of $140,-000.00 is GRANTED.

 *Plaintiff Interval's Motion for Partial Summary Judgment—Transfer Between Accounts of Plaintiffs Wallsten and Interval.* Plaintiff Interval contends that two transfers, totalling $246,924.15, from its account at IBC to Wallsten's account at the same bank were accomplished without authorization and created a negative balance in Interval's account at IBC. In response, IBC puts forward the deposition of Mario Lopez, a vice-president at IBC. Lopez asserts that he had a conversation with Wallsten, a signatory on Interval's account at IBC, in which Wallsten authorized the transfer of funds from the Interval account to cover the deficit in Wallsten's account at IBC. This testimony creates a genuine issue of fact for trial. Interval's Motion for Partial Summary Judgment on the issue of the transfers between the accounts is DENIED.