E. Sven WALLSTEN, et al., Plaintiffs,

v.

INTERNATIONAL BANK OF
COMMERCE OF LAREDO,
Defendant,

v.

E. Sven WALLSTEN, et al., Counter–
Defendants and Third–Party
Defendants.

Civ. A. No. L–88–65.

United States District Court,
S.D. Texas,
Laredo Division.

July 26, 1991.

Horce C. Hall, Alberto Alarcon, Laredo, Tex., Andrew B. Krafsur, Richard B. Perrenot, Victor F. Poulos, El Paso, Tex., for plaintiffs.

Robert D. Daniel, Michael D. Conner, Houston, Tex., Carlos D. Castillon, Freeman & Castillon, Laredo, Tex., for defendants.

Andy A. Tschoepe, II, Cox & Smith Inc., San Antonio, Tex.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending are five motions for partial summary judgment by Defendant International Bank of Commerce (IBC). Background facts were previously reviewed in this Court's opinion of October 23, 1990. 770 F.Supp. 1161. The five motions are resolved as follows:

■ *Payment—Wallsten.* IBC asserts that Plaintiff Sven Wallsten made alternative arrangements with Horst Von Soden for the partial payment of the $250,000 check (check # 712) which was lost before it was deposited to Wallsten's account at IBC. IBC notes that Von Soden transferred $100,000 to Wallsten's account at Merrill Lynch in Chicago and contends that any recovery by Wallsten should be reduced to the extent of this payment by Von Soden.

IBC, however, ignores Wallsten's testimony that he passed $50,000 of the $100,000 to a third party at the behest of Von Soden. Therefore Wallsten has admitted to receiving only $50,000 as reduction of Von Soden's indebtedness to him. Whether the other $50,000 should be credited against any recovery by Wallsten on the lost check remains a genuine issue of material fact. To the extent of the $50,000 which Wallsten admits receiving from Von Soden in satisfaction of the lost check, the Court GRANTS IBC's motion for partial summary judgment. Otherwise, it is DENIED.

■ *Payment—Interval.* IBC next asserts that the execution by Wallsten of a $250,000 promissory note in favor of Interval was in settlement for the allegedly unauthorized fund transfers between the accounts of Interval and Wallsten at IBC and thus absolves IBC of any liability to Interval. The affidavits of Wallsten and Roxana Mercenario assert that such was not their intent and, in assessing whether the giving of a note effects a termination of liability, the intent of the parties to the payment is controlling. *Duncan v. United Mut. Fire Ins. Co.,* 113 Tex. 305, 254 S.W. 1101, 1102 (1923) ("note of a debtor does

not amount to payment of the indebtedness ... unless the circumstances show that such was the intention of the parties"); *L & N Consultants, Inc. v. Sikes,* 648 S.W.2d 368, 371–72 (Tex.App.—Dallas, 1983, writ ref'd n.r.e.); *Longhorn Flying Club, Inc. v. Dragoo,* 464 S.W.2d 189, 194 (Tex.Civ. App.—Austin, 1971, writ ref'd n.r.e.); *Page v. Superior Stone Products, Inc.,* 412 S.W.2d 660, 665 (Tex.Civ.App.—Austin, 1967, writ ref'd n.r.e.). An issue as to whether a note is intended to serve as payment on an indebtedness is one for the finder of fact and is generally not appropriate for disposition by summary judgment. *Standard Accident Ins. Co. of Detroit v. Smith Perry Elec. Co.,* 373 S.W.2d 97, 99 (Tex.Civ.App.—Eastland, 1963), *writ ref'd n.r.e. per curiam,* 376 S.W.2d 335 (Tex. 1964). Therefore, there is a genuine issue of material fact as to whether the promissory note executed by Wallsten extinguished IBC's liability. IBC's motion for partial summary judgment on payment of Interval is DENIED. On July 19, 1991, the Court granted IBC permission to re-depose Mercenario on this precise issue. The current ruling is without prejudice to a renewed motion based on her testimony at that time.

■ *Conspiracy.* IBC contends that, since Wallsten has claimed in his submissions and pleadings to this Court that Abraham Neiman was an agent or employee of IBC, Wallsten's claim of civil conspiracy between IBC and Neiman fails as a matter of law. Under Texas law a corporation, except in limited circumstances, cannot conspire with its own employees. *Fotjik v. First Nat'l Bank,* 752 S.W.2d 669 (Tex.App.—Corpus Christi, 1988), *writ denied, with per curiam opinion,* 775 S.W.2d 632 (Tex.1989). However, IBC itself has stated in its submissions to this Court that Neiman was not an agent or employee of IBC, but rather was an "independent contractor," whereby IBC seeks to avoid liability for Neiman's alleged intentional tort against Wallsten.

Obviously, the status of Neiman as employee of IBC or independent contractor is a significant issue in this litigation. Neither side has put forward undisputed facts sufficient for a determination of this issue by summary judgment. IBC's motion for partial summary judgment as to conspiracy is DENIED.

■ *Punitive Damages.* Wallsten, Interval, and others executed an agreement transferring a portion of their interests in this litigation among themselves. IBC argues that claims for punitive damages are not assignable, and that therefore the assignment somehow extinguished that claim.

Although IBC presents no authority directly on point, it argues that a claim for punitive damages is a personal right, *Scoggins v. Southwestern Electric Serv. Co.,* 434 S.W.2d 376, 379 (Tex.Civ.App.—Tyler, 1968, writ ref'd n.r.e.), and a personal right cannot be assigned. *See First Nat'l Bank of Kerrville v. Hackworth,* 673 S.W.2d 218 (Tex.App.—San Antonio, 1984, no writ). *Hackworth* did not deal with assignability but rather with the survival after the death of the aggrieved party of a punitive damages claim under the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm. Code Ann. § 17.01 *et seq.* (Vernon 1987). In contrast, the Texas Court of Appeals in *Bay Ridge Utility Dist. v. 4M Laundry,* 717 S.W.2d 92 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), held that "[s]o long as the original parties remain in the suit and the rights of the person who was plaintiff at the time of the commencement of the suit remain in issue, the assignment does not affect the justiciability of the cause of action." *Id.* at 97. In this case, even after the assignment agreement, the original parties remain in the suit and the rights of the original plaintiffs remain in issue.[1]

This Court also finds compelling the language of the Texas Property Code, relied

---

1. It should be noted that the parties to the assignment in question were not strangers to this controversy but, besides Wallsten, were former and current shareholders of Interval. The purpose of the assignment was to resolve a dispute among them as to the ownership rights to Interval's claims against IBC. Through the agreement, Interval assigned to Linda Heather, former majority shareholder of Interval, a one-half interest in Interval's claim. As considera-

upon in *Bay Ridge, supra,* which provides that "an interest in a cause of action on which suit has been filed may be sold, regardless of whether the ... cause of action is assignable in law or equity, if the transfer is in writing." Tex.Prop.Code Ann. § 12.014(a) (Vernon 1984). The transfer at issue here is in writing.

IBC's motion for partial summary judgment as to punitive damages is DENIED.

■ *Intentional tort—Assault and battery.* Wallsten alleges that Abraham Neiman, acting as an agent of IBC, came to his home in Mexico City, Mexico on July 20, 1988, and assaulted him to coerce him to authorize the transfer of funds between Interval's and Wallsten's accounts at IBC. IBC disputes Wallsten's contention that Neiman was an employee of IBC and asserts that Neiman was in fact an "independent contractor" of IBC in Mexico City.

IBC argues that, even assuming *arguendo* that Neiman was an employee of IBC at the time of the assault, as a matter of Texas law Wallsten could not hold IBC liable for such an intentional tort by its employee. IBC cites several Texas decisions for the proposition that it is almost never within the scope of a worker's employment to commit an assault on another. IBC also asserts that there is no factual dispute that Neiman assaulted Wallsten for his own purposes and not in pursuit of his employer's aims. Obviously if Neiman was acting solely for his own ends, he was acting outside the scope of his employment by IBC.

Texas law is not entirely clear in this area. Some Texas courts have employed the so-called "rule of force" analysis to determine whether an employer could be held liable for an assault by its employee. *See Texas & Pacific Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236 (1952); *Dart v. Yellow Cab, Inc.,* 401 S.W.2d 874 (Tex. Civ.App.—Amarillo, 1966, writ ref'd n.r.e.). For liability to attach to the employer under this analysis, "the employer must have authorized the act, either expressly or impliedly, by placing the individual in a position which involved the use of physical

tion for this assignment, Wallsten and Heather assigned one-half interests in their claims to

force itself ... a plaintiff had to allege and prove that the servant's position was one that permitted the use of force...." *Rosales v. American Buslines, Inc.,* 598 S.W.2d 706, 708 (Tex.Civ.App.—El Paso, 1980, writ ref'd n.r.e.). Other Texas courts have employed the "more liberal" rule based on the "scope of employment" analysis. *Id.* Under this approach, the test of an employer's liability:

is not whether the servant's employment contemplated the use of force, but whether the act complained of arose directly out of and was done in the prosecution of the business that the servant was employed to do. Even under that rule, a plaintiff is denied recovery where the employee at the time of the assault was not acting within the scope of his employment but was furthering his own interest.

*Id.; see also Green v. Jackson,* 674 S.W.2d 395, 398 (Tex.App.—Amarillo, 1984, writ ref'd n.r.e.). Texas decisions have recognized this split as to the appropriate test to be applied but have yet to definitively resolve it. *See Green,* 674 S.W.2d at 398–99. It seems that more recent decisions have tended to employ the "scope of employment" analysis. *See Saenz v. Family Sec. Ins. Co. of America,* 786 S.W.2d 110, 111 (Tex.App.—San Antonio, 1990, no writ); *Frito–Lay Inc. v. Ramos,* 770 S.W.2d 887, 889 (Tex.App.—El Paso, 1989) *rev'd on other grounds,* 784 S.W.2d 667 (Tex.1990) (court of appeals' denial of punitive damages to victim was overturned); *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Rosales,* 598 S.W.2d at 709 (court of appeals cited both tests, but ruled against plaintiff on basis of scope of employment test); *see also Valdez v. Church's Fried Chicken, Inc.,* 683 F.Supp. 596, 610 (W.D.Tex.1988) (employer would not be liable for sexual assault by employee on basis of either test).

In a case of diversity jurisdiction this Court's duty is to "choose the rule which [the court] believes [Texas'] highest court would most likely adopt." *Balliache v. Interval.*

*Fru–Con Constr. Corp.,* 866 F.2d 798, 799 (5th Cir.1989). The trend appears to be clearly in favor of the application of the "scope of employment" rule. Most, if not all, of the cases arguably using the "rule of force" analysis actually turn on facts indicating some personal animosity. For example, in *Hagenloh, supra:*

> It is true that the assault may be traced back to Houghland's performance of his duty to investigate the loss of the jewelry, but that investigation was the remote cause of the personal encounter, and the encounter and assault were not so clearly related to the investigation in time or in place as to be a part of it.

247 S.W.2d at 241.

And in *Dart, supra,* the cab driver actually committing the assault testified:

> "Well, you don't collect a fare by beating men up.... That wasn't what I hit the man for, on account of the money. I hit him because I was high-tempered and he had me a little bit shook up.... I lost my temper, is how come me to hit that man."

401 S.W.2d at 877.

In this case, therefore, the key inquiry will be whether the alleged assault by Neiman "arose directly out of and was done in the prosecution of the business that [he] was employed to do." *Saenz,* 786 S.W.2d at 111 (citing *Rosales, supra* ). A corollary inquiry will be whether Neiman's assault was an expression of personal animosity, not connected to the employer's business and not committed in furtherance of it. *See, e.g., Kendall,* 759 S.W.2d at 755 (employee struck customer of restaurant with french fry basket); *Viking v. Circle K Convenience Stores,* 742 S.W.2d 732, 734 (Tex.App.—Houston [1st Dist.], 1987, writ denied) (store manager shot person who scratched his car). In this case, there is a factual dispute as to Neiman's motivation when he entered Wallsten's home. Neiman has testified that he went there to discuss a personal debt that Wallsten owed him. In contrast, Wallsten has testified that Neiman stated he was there to get Wallsten to authorize the transfer of funds between his and Interval's accounts at IBC. The latter purpose would presumably benefit IBC since an unauthorized transfer between the accounts potentially exposed IBC to

liability. *Cf. Saenz,* 786 S.W.2d at 111 (act of servant of no conceivable benefit to employer could not be "in furtherance of his employment").

■ Since Wallsten has raised a genuine issue of material fact as to Neiman's motivation in allegedly attempting to coerce and assaulting him, summary judgment as to this claim is inappropriate. Moreover, under Texas law, the question of whether an act is within the scope of a servant's employment is usually reserved for the finder of fact. *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 882 (1948); *Pratley v. Sherwin–Williams Co. of Texas,* 56 S.W.2d 510, 512 (Tex.Civ. App.—El Paso, 1933, no writ).

IBC's motion for partial summary judgment as to Plaintiff Wallsten's claim of intentional tort by Abraham Neiman is DENIED.