# THE
# TEXAS LAW REPORTER.

AUSTIN, TEXAS, JULY, 1882.

## G. H. & S. A. R. R. vs. J. D. FREEMAN.

### SUPREME COURT, AUSTIN TERM, 1882.

*Assignability of claim against railroads for killing or injuring stock.*— Citing Butler vs. New York and Erie Railroad, 22 Barbour, 110, and other authorities, the court adopts the rule there expressed, that "mere personal torts die with the party and are not assignable. Such are actions of slander, libel, assault and battery, false imprisonment, crim. con., seductions, etc. On the other hand, when the injuries affect the estate, rather than the person, when the action is brought for damages to the estate and not for injuries to the person, personal feelings or character a right of action could be bought or sold. Such right of action, upon the death, bankruptcy or insolvency of the party injured, passes to the executor or assignee as part of his assets, because it affects his estate and not his personal rights."

Appeal from Fort Bend county.—Opinion by Delaney, J.—At our last term at Galveston, an opinion was rendered in this cause, reversing the judgment of the court below, and remanding the case. As our access to authorities at that time was limited, the cause was, at our request, referred back to us by the Supreme Court for a more careful examination at this term. The only doubt which we entertained about the correctness of the opinion rendered at that time, grew out of the question, whether the plaintiff, claiming damages against the railroad company for killing his stock, could include similar claims which had been transferred to him by other persons. To state the case more directly, the question is, whether a claim against a railway company for killing or injuring live stock can be assigned so as to enable the assignee to bring suit in his own name. And we frankly admit that a careful examination of the authorities has satisfied us that the opinion which we then expressed against the assignability of such claims is incorrect.

In our former opinion we say, that, " by the strict rule of the ancient common law, choses in action could not be assigned. A man could not make over to a stranger his right of going to law.

3A

(2 Stephens Com., 101.)   But now everything which can be called a debt can be assigned, and the assignee may recover either in his own name, or in that of the assignor."

As the old ideas gradually wore away, courts of common law allowed the assignor to sue in his own name for the use of the assignee.   Our statute simply recognized this practice when it provides "that when a suit has been instituted in the name of one person for the use of another, and the person in whose name the suit has been instituted shall die before verdict, it shall not be necessary to revive such suit in the name of the representative of such person."   But though the statute recognized such practice as existing, it did not require it.   On the contrary, the person in whose name the suit is brought is merely a nominal party, having no interest in the suit, and incapable of exercising any control over it.   It has been held that the permission of the nominal plaintiff thus to use his name need not be obtained, and that if the defendant should plead in reconvention against him, and obtain a judgment without serving him with process, and actually bringing him into court, the judgment would be void.   (McFadden vs. McGreal, 25 Texas, 73.)   The practice in our State has confirmed the general equity practice of permitting the equitable owner to sue in his own name.   (Merlin vs. Manning, 2 Texas, 351; Guest vs. Rhine, 16 Texas, 549; Bullion vs. Campbell, 27 Texas, 653.)

It still remains to determine what claims will pass by assignment. Before discussing this branch of the subject, we may be permitted to say that we do not consider the remark of Justice Lipscomb in Holliman vs. Rogers, 6 Texas, as binding authority, at least in a court of equity.   The case which he puts is this, that where a surety upon a note pays and takes it up, his action against the principal is not upon the note, but upon the implied assumpsit on the part of the principal to repay to him the amount of money which he has paid out, and that this assumpsit is not assignable.

In so far as the right of action is concerned, and probably as to the assignability also, the learned judge laid down the correct rule as it is enforced in courts of common law.

But the rule in equity is announced with great clearness and force in Sublett vs. McKinney, 19 Texas, that upon payment by the surety, he is subrogated to the rights of the principal, not only as to collateral securities, but as to the instrument itself, and can sue thereon.   (See Tutt vs. Thornton, decided at the present term.)

As to the question of assignability, Justice Story states the rule as follows: "In general it may be affirmed that mere personal *torts*, which die with the party and do not survive to his personal representative, are not capable of passing by assignment;" and that "vested rights, *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment." (Comegys vs. Vane, 1 Peters U. S. 213)

As many of the decisions to which we were referred were rendered by the courts of the State of New York, we preferred postponing final action upon this case until we could ascertain whether those decisions rested upon statutory enactments in that State, or whether they were declaratory of the general doctrines of equity jurisprudence.

We find that the code of that State has made no change with respect to the assignability of *choses in action*. It simply requires (what our practice permits) that suits shall be brought in the name of the real parties in interest. In Hodgman vs. Western Railroad Company (7 Howard, 493), it is said that "the only change made by the code in respect to the transfer of a thing in action, is to transfer, with the beneficial interest, the right of action also in those cases where, before the code, a court of equity would recognize and protect the rights of the assignee. No new right of action is created; no authority is given to assign a right of action which before was not assignable." Bearing this in mind, we will review fairly a few of the cases in which different causes of action have been held assignable. A right of action for an injury occasioned by negligence in not making an arrest was held assignable in 38 Barbour, page 18; for an injury in setting fire to fences (25 Howard, 283); for loss of goods by a carrier (12 N. Y., 622); loss of goods by an inn-keeper (4 E. D. Smith, 88.)

A case involving the precise question now before us was decided in Butler vs. New York and Erie Railroad Company (22 Barbour, 110.) In that case the engine and cars of the company ran over and killed a yoke of oxen belonging to one Warner, of the value of one hundred dollars. Warner transferred his claim to the plaintiff, who recovered a judgment for that amount. On appeal by the company, the Supreme Court held that the appeal was well brought. In that case the general rule is laid down as follows: "Mere personal *torts* die with the party, and are not assignable. Such are actions of slander, libel, assault and battery, false imprisonment, crim,

con., seduction, etc.    On the other hand, when the injuries affect the estate rather than the person, when the action is brought for damages to the estate, and not for injuries to the person, personal feelings or character, a right of action could be bought or sold. Such rights of action, upon the death, bankruptcy or insolvency of the party injured, passes to the executor or assignee as a part of his assets, because it affects his estate and not his personal rights." The court cites the following authorities: 19 Wend., 73; 1 Chitty's Pleading, 68; 2 Manl. & Sel., 408; 9 Serg. & Rawle, 244; 6 How. P. R., 161; 1 Peters' Rep., 213; 7 How. P. R., 492; 1 Sel., 347.

In the American notes to the case of Row vs. Dauson, and Ryall vs. Rowles (White and Tudor's Leading Cases in Equity, vol. 2, part 2), the rule stated above is treated as the general rule in America. It is said to be the rule in England also, but with some uncertainty and conflict in the decisions.

As the result of a more extended examination of the authorities, we conclude that there is no error in the judgment, and that it should be affirmed.

Report of Commissioners of Appeals examined, their opinion adopted and the judgment affirmed.—GOULD, C. J.