# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-05-00007-CV

---

**State of Texas, Appellant**

**v.**

**Barbara Oakley, as Guardian of the Estate and Person of
Richard Danziger, A Disabled Adult, Appellee**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 75107C, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## O P I N I O N

The question presented is whether a claim for compensation for wrongful imprisonment under chapter 103 of the civil practice and remedies code can be assigned to, and enforced by, a third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.001-.154 (West 2005) (Compensation to Persons Wrongfully Imprisoned). We hold that it can. The State appeals the trial court's denial of its plea to the jurisdiction contending that (1) the statutory waiver of sovereign immunity in chapter 103 does not extend to an assignee, (2) common-law principles do not allow assignment of chapter 103 claims, and (3) there is no jurisdiction because the wrongfully convicted person has already received compensation through a settlement with the City of Austin. We affirm the trial court's denial of the plea to the jurisdiction.

**Factual and Procedural Background**

Christopher Ochoa and Richard Danziger were wrongfully imprisoned for over twelve years for the October 1988 rape and murder of Nancy DePriest. Ochoa falsely confessed to the crime and falsely implicated Danziger as a participant. Pursuant to a plea agreement, Ochoa pleaded guilty to murder on May 5, 1989. As required by the terms of the agreement, Ochoa testified against Danziger. Danziger was convicted of aggravated sexual assault and sentenced to life in prison on March 6, 1990. In 1996, another man confessed to the murder and was later linked to the crime by an extensive investigation conducted by the Travis County District Attorney's Office. The court of criminal appeals granted habeas corpus relief on the basis of actual innocence to both Ochoa and Danziger in December 2001, and their indictments were dismissed by the district court in February 2002. *See Ex parte Ochoa*, No. 74,246 (Tex. Crim. App. December 19, 2001) (unpublished per curiam opinion); *Ex parte Danziger*, No. 74,244 (Tex. Crim. App. December 19, 2001) (unpublished per curiam opinion). Ochoa sued the City of Austin in federal district court and received a sizable settlement. Danziger, through his guardian Barbara Oakley,[1] then brought suit against Ochoa for falsely implicating him in the murder. As part of a settlement agreement in that case, Ochoa assigned his right to compensation under chapter 103 of the civil practices and remedies code to

_____

[1] Danziger was declared incompetent and in need of a guardian because of the brain injury he sustained from a beating while incarcerated. The State does not contend that Danziger's reliance on his guardian, Oakley, to pursue his rights affects our determination of its sovereign immunity and assignability issues. Thus, we will consider the State's issues as if Danziger had brought the suit himself. We also emphasize that Danziger's status as a wrongfully convicted person himself is irrelevant to his ability as an assignee to assert Ochoa's rights to relief under chapter 103. Danziger also received a substantial settlement from the City of Austin but that settlement has no bearing on the issues in this appeal.

Oakley, as Danziger's guardian. Oakley then brought suit against the State on behalf of Danziger as the assignee of Ochoa's rights.

**Chapter 103: Compensation to Persons Wrongfully Imprisoned**

Because the issues in this case require us to interpret the statute, it is useful to review the relevant provisions of chapter 103 of the civil practices and remedies code. Chapter 103 generally serves to compensate persons who have been wrongfully convicted and incarcerated by the State. A person is entitled to compensation under the chapter if (1) the person has served in whole or in part a sentence in prison under the laws of the State of Texas, and (2) the person has been pardoned on the basis of innocence or has been granted relief on the basis of actual innocence. Tex. Civ. Prac. & Rem. Code Ann. § 103.001(a). A person need not show any fault by the State, and he is entitled to the same compensation whether his wrongful imprisonment resulted by accident or from intentional misconduct by the State.

Chapter 103 contains an explicit waiver of sovereign immunity, stating that a person may bring a suit against the State and that "the suit must be initiated by a verified petition alleging that the petitioner is entitled to compensation."[2] *See id*. § 103.101. If the trier of fact determines that the petitioner is entitled to compensation, the petitioner may collect expenses and attorney's fees,

---

[2] In the alternative, a wrongfully imprisoned person may opt to file an administrative application with the Comptroller seeking compensation pursuant to section 103.051 of the code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.051 (West 2005). Under this provision, an applicant is entitled to compensation in the amount of $25,000 per year served in prison. *Id*. § 103.052 (West 2005). Recovery under the administrative procedure is capped at $500,000. *Id*.

lost wages, and medical and counseling expenses. *Id*. §103.105(a). Damages are capped at $500,000. *Id*. § 103.105(c). Once a finding is made that a person is entitled to compensation under this chapter, notice is given to the governor, lieutenant governor, and the appropriate committee chairs in the legislature so that the legislature may appropriate the funds to pay compensation. *Id*. § 103.152(a). Compensation is to be paid no later than September 1 of the year the appropriation is made. *Id*. § 103.152(b). Even if a person is otherwise entitled to compensation, payments under the statute terminate if the person is convicted of a felony or dies before receiving payment. *Id*. § 103.154.

**Waiver of Sovereign Immunity**

In its first issue, the State contends that there is no jurisdiction over Oakley's claim for compensation because the waiver of sovereign immunity contained in chapter 103 does not extend to her suit. Focusing on the filing requirements in section 103.101(b), the State argues that the statute permits a suit only by a person who is "entitled to compensation." *See id*. § 103.101(b). The State then concludes that Ochoa, not the assignee of his rights, is entitled to compensation as defined by the statute, and, accordingly, there is no waiver of sovereign immunity as to Oakley's suit on behalf of Danziger. *See id*. § 103.001(a). We agree that the plain language of the statute requires a petition to be filed by a person "entitled to compensation" and that, technically, only Ochoa meets this definition for the purposes of this suit. Thus, the waiver of sovereign immunity may only extend to a suit brought on behalf of Danziger if the common-law notion that an assignee stands in the shoes of the assignor applies to the waiver of sovereign immunity under chapter 103. *See Holy Cross Church of Christ v. Wolf*, 44 S.W.3d 562, 573 (Tex. 2001); *Burns v. Bishop*, 48 S.W.3d 459, 466

(Tex. App.—Houston [14th Dist.] 2001, no pet.) (axiomatic that assignee walks in shoes of assignor); *see also Vermont Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S. 765, 773 (2000) (assignee of claim has standing to assert the injury in fact suffered by assignor). We must determine if this principle of assignment is consistent with the policies underlying chapter 103 and sovereign immunity.

Our supreme court has long held that "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) (quoting *Hosner v. De Young*, 1 Tex. 764, 769 (1847)); *see also Beers v. State*, 61 U.S. 527, 529 (1857). Although the concept of sovereign immunity stems from the feudal fiction that "the King can do no wrong," Texas has abandoned that fiction and acknowledged that the purpose of retaining a significant measure of immunity is to protect the public treasury. *Wichita Falls State Hosp.*, 106 S.W.3d at 697. The code construction act confirms that the restrictions on the waiver of sovereign immunity are intended to "preserve the legislature's interest in managing state fiscal matters through the appropriations process." Tex. Gov't Code Ann. § 311.034 (West 2005).

In determining whether there is a waiver of sovereign immunity, we are guided by three principles. *See University of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). First, the waiver of governmental immunity is a matter addressed to the legislature. *Id*. Second, to waive sovereign immunity, a statute must contain a clear and unambiguous expression of the legislature's intent to waive sovereign immunity. Tex. Gov't Code Ann. § 311.034; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d at 696; *Federal Sign v. Texas S. Univ.*,

5

951 S.W.2d 401, 405 (Tex. 1997); *York*, 871 S.W.2d at 177. Third, in accordance with section 311.023 of the code construction act, we must construe the waiver provision to give effect to the object sought to be attained by the statute. *York*, 871 S.W.2d at 177; *see* Tex. Gov't Code Ann. § 311.023 (West 2005).[3] When construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697. If the text and history of the statute create doubt as to whether the legislature intended to waive sovereign immunity, we are less likely to find a waiver. *Id.*

---

[3] Section 311.023 of the government code states:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

Tex. Gov't Code Ann. § 311.023 (West 2005).

The State and the dissent argue that sovereign immunity is not waived as to this suit because chapter 103 does not clearly and unambiguously specify that a suit for wrongful imprisonment may be assigned. We think this misapplies and misunderstands the purpose of the supreme court's language requiring a statute to waive sovereign immunity clearly and unambiguously. Chapter 103 could not be clearer that the State's immunity is waived to allow suit for wrongful imprisonment. The extent of this waiver is also clear: the State can only be sued when there has been a wrongful imprisonment. It is not further required, as the dissent suggests, that the statute mention that a claim may be assigned. Such a holding would ignore the supreme court's teaching that when a statute is silent as to assignability, we must look to the common law, including principles of equity and public policy, to determine whether a claim may be assigned. *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 n.28 (Tex. 2004); *Jackson v. Thweatt*, 883 S.W.2d 171, 175 (Tex. 1994) ("As the statute at hand is silent as to the rights of assignees, we turn to the common law to fill the gap.") (quoting *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993)); *see also Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998) ("Because the statute is silent on which party has the burden to prove the settlement amount, we refer to the common law."). Assignment is a common-law principle allowing an assignee to stand in the shoes of the assignor precisely when there is no statutory or other right to assert such a cause of action. Although creating a waiver of immunity is the job of the legislature, the application of the common law governing assignability is the job of the courts.

If we look to the policy behind sovereign immunity and the objectives of the statute, there is no inherent reason to deprive a wrongfully convicted person of the right to assign such a

7

cause of action. First, the assignment of a chapter 103 claim does not implicate the fiscal policy concerns underlying our strict construction of waivers. *See* Tex. Gov't Code Ann. § 311.034. A statute's creation of a waiver must be clear and unambiguous because "[w]aiver of governmental immunity, and imposition of the financial burden resulting from waiver on the taxpayers of this State, is a determination to be made by the Legislature." *York*, 871 S.W. 2d at 179. In chapter 103, the legislature clearly expressed its intent to waive immunity when a person has been wrongfully convicted. Unlike the ill-defined waiver for "use of tangible personal property" discussed in *York*, "wrongful conviction" is clearly defined by chapter 103. *See York*, 871 S.W.2d at 177 ("Our construction of section 101.021(2) of the Tort Claims Act and the scope of waiver expressed therein has a long and arduous history."). There is no risk that assignability would expand the existence or the extent of a claim under chapter 103 because the legislature precisely limited the nature of the claim and carefully capped the recovery available. Moreover, the common-law principles of assignment would also impose on the assignee the same statutory limitations imposed on the assignor: the right to receive payment for wrongful imprisonment terminates if the assignor is convicted of a felony or dies before the assignee receives payment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.154. Permitting assignment of a chapter 103 right to sue would neither increase the number of claims nor enlarge the drain on the State's treasury. More importantly, it is in harmony with the objectives of the statute.

As reflected in the title of chapter 103, the statute provides compensation to persons who have been wrongfully convicted. Tex. Civ. Prac. & Rem. Code Ann. ch. 103 ("Compensation to Persons Wrongfully Imprisoned"). In a suit filed under this chapter, a person may claim lost

wages, attorney's fees, expenses from prior criminal proceedings, and medical and counseling expenses resulting from the wrongful imprisonment. *See id*. § 103.105. There is no provision for non-economic damages, and the total recovery is capped at $500,000. *See id*. The statute reflects the legislature's intent to compensate a wrongly convicted individual for his economic losses, not to remedy mental anguish or punish the State for misconduct. It essentially gives an individual the money he would otherwise have earned during the time spent in prison. Nothing about this purpose is at odds with permitting the wrongfully convicted person to be compensated by assigning his right to sue in exchange for something of value or in satisfaction of a debt, as happened in this case. Given the purpose of the underlying legislation, there is no suggestion of legislative intent to prevent an otherwise lawful assignee from pursuing a claim assigned by a wrongfully convicted person under chapter 103.

We note that there is a significant delay in compensation built into the statute. Once a court finds that a person is entitled to certain compensation, that person cannot collect as he would on a judgment. Instead, he must wait for the next legislative session and obtain a specific appropriation by the legislature, which then becomes due by September 1 of that year. *See id*. § 103.152. The statute does not provide for interest. *See id*. §103.152(a)(2). It could easily take several years for a meritorious claim filed under chapter 103 to ultimately be paid. There is no doubt that such a lengthy delay in compensation will exacerbate the economic injury suffered by a wrongfully convicted person. Likewise, such an individual may not be in an emotional or economic position to pursue costly and lengthy litigation immediately upon release. The ability to assign a chapter 103 claim allows that person to satisfy a debt or obtain immediate access to funds. This

9

gives the individual a choice to make a fresh start without becoming entangled in years of litigation and legislative action, furthering the legislative intent of affording limited economic reparations for wrongful imprisonment.[4]

The dissent relies on the supreme court's holding in *Wichita Falls State Hospital* that a statute must contain a clear and unambiguous expression of the legislature's intent to waive immunity. *See* 106 S.W.3d at 696. We agree. The statute at issue in that decision, chapter 321 of the health and safety code, created a "patient's bill of rights" but never expressly waived the State's immunity. *See id*. at 698. The question presented was whether one could look to another section of the health and safety code, defining mental health facilities to include a "facility operated by the department," and then move to yet another section that identified "the department" as the Texas Department of Mental Health and Mental Retardation, to infer that the patient's bill of rights waived immunity for suit against state facilities. *See id*. at 699. This holding has no applicability to the express waiver contained in chapter 103, in which the legislature unambiguously waives the State's immunity to permit suit for limited recovery for a wrongful conviction. One need not look to a definition in another section of the statute to discern what the legislature intended.

In *Wichita Falls State Hospital,* the supreme court considered that reading waiver into the patient's bill of rights, a statute that never mentioned the word waiver, would expose the State to unprecedented liability by subjecting it to exemplary damage awards, contrary to the legislature's "interest in protecting the State's financial resources." *Id*. at 701. By contrast, the ability to assign

---

[4] Nor would assignability create an undue administrative burden. The payments are to made in two installments one year apart, and the burden of establishing that the assignor is still alive and has not been convicted of a felony would fall on the assignee.

a claim under chapter 103 will not expand the State's fiscal liability but will further the objective of the statute—to repair economic injury sustained by the wrongfully convicted.[5]

Nor is it proper to interpret the supreme court's demand that a waiver of sovereign immunity be clear and unambiguous, to require unambiguous legislative approval before a claim can be assigned. *Wichita Falls State Hospital* did not involve an assignment and in no way suggests that a statute must explicitly mention assignments before a claim against the State may be assigned. The dissent mistakenly treats assignment as a right that must be grounded in the underlying statute. This ignores the longstanding principle that the assignment of claims is to be determined under common-law rules: "Thus, while the statute alone might not vest any rights in the transferees, the statute combined with the common law of assignment does." *Jackson v. Thweatt*, 883 S.W.2d at 175.[6] The holding in *Wichita Falls State Hospital* has no applicability to the express waiver contained in chapter 103 or to the issue of assignability. Accordingly, we hold that the chapter's express waiver of sovereign immunity extends to an assignee of a claim and overrule the State's first issue.

---

[5] Although the facts in *Wichita Falls State Hospital* are distinguishable, the supreme court's analysis is instructive. The court closely examined the implications of finding a waiver in terms of the objectives of the statute and the fiscal policy underlying sovereign immunity. *See Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 700-02 (Tex. 2003) (immunity would not defeat purpose of the statute and would protect State from indeterminate damage awards). Applying the same analysis in this case, we conclude that the waiver of sovereign immunity in chapter 103 extends to an assigned claim.

[6] Under the dissent's view, no cause of action against the State would be assignable unless expressly stated by statute. Such a view would likely prohibit assignment of most claims against the State because the legislature has traditionally left the determination of assignability to the courts unless it is expressly prohibited by statute.

**Chapter 103 Claims Assignable**

Having held that the statute's waiver of sovereign immunity extends to an assignee of a claim, we consider the State's second jurisdictional issue, whether chapter 103 claims are assignable under common law. The State and the dissent argue that such claims may not be assigned because they are (1) personal in nature and (2) expire on the death of the wrongfully convicted person. In addressing this issue, we look to the nature of chapter 103 claims and the policy implications of allowing assignment.

When a statute is silent as to whether a claim may be assigned, we look to common law principles. *PPG Indus.*, 146 S.W.3d at 87. The traditional common-law rule generally prohibited assignment of claims. *Id.* However, this rule has steadily eroded and the general rule now favors assignability. *See id.*; *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 706 (Tex. 1996). "But the assignability of *most* claims does not mean that *all* are assignable; exceptions may be required due to equity and public policy." *PPG Indus.*, 146 S.W.3d at 87 (footnotes omitted); *see also Gandy*, 925 S.W.2d at 707 (emphasizing the "role of equity or policy" in determining whether a claim may be assigned).[7] Indeed, all of the supreme court's recent cases deciding whether certain

---

[7] We note that policy concerns were paramount even when assignment was the exception to the rule:

> And first was observed the grand wisdom and policy of the sages and founders of our law, who have provided, that no [cause of action] shall be granted or assigned to strangers, for that would be the occasion of multiplying of contentions and suits, of great oppression of the people . . . and the subversion of the due and equal execution of justice.

*Lampet's Case*, 77 Eng. Rep. 994, 997 (K.B. 1613); *see Gandy*, 925 S.W.2d at 706.

causes of action may be assigned focus on the policy implications of assignment. *See PPG Indus.*, 146 S.W.3d at 90; *Gandy*, 925 S.W.2d at 707; *Elbaor v. Smith*, 845 S.W.2d 240, 247 (Tex. 1992); *International Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988). In each of these cases, the supreme court has prohibited assignment out of concern that it would distort the litigation by realigning the interests of the parties. *See PPG Indus.*, 146 S.W.3d at 91 ("We have prohibited assignments that skew the trial process, confuse or mislead the jury, promote collusion among nominal adversaries, or misdirect damages from more culpable to less culpable defendants."); *Gandy*, 925 S.W.2d at 713; *Elbaor*, 845 S.W.2d at 249; *International Proteins Corp.*, 744 S.W.2d at 934.

As we have stated, chapter 103 is intended to compensate the economic damages suffered by a wrongfully convicted person. Only one claim may be brought against the State for any wrongful conviction. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 103.001, .101(d). We do not find, and the State has not raised, even a hypothetical risk that assignment of a claim under chapter 103 would somehow distort litigation in the manner discussed by the supreme court. *See PPG Indus.*, 146 S.W.3d at 90. Although the supreme court envisioned that jurors might be confused in assessing mental anguish or punitive damages when the affected person is not a party, *see id.*, these damages are not available under chapter 103. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.105.

A related consideration in determining whether a claim or cause of action may be assigned is whether the right asserted is regarded as personal to the holder. *See Gandy*, 925 S.W.2d at 706. In *Gandy*, the supreme court explained that common law traditionally barred assignment of claims considered personal because of the risk of unjust prosecution of claims and because such

13

claims "could not be enforced apart from [their] context without risking distortion." *Id*. In *PPG Industries*, the court considered whether claims under the deceptive trade practices act (DTPA) were assignable. *See* 146 S.W.3d at 83. The court observed that claims that are "property-based and remedial" have historically been found assignable and claims that are "personal and punitive" have not. *Id*. at 87. With regard to DTPA claims, the court focused on the personal and punitive nature of a DTPA claim. *See id*. at 89. The court compared a DTPA claim with a warranty claim, explaining that "there must be a 'personal' aspect in being 'duped' that does not pass to subsequent buyers the way a warranty does." *Id*. The court also compared the remedies provided in the DTPA:

> In such cases, the most important role of the DTPA is the remedies it *adds*, not the ones it *duplicates*. Economic damages and attorney's fees are certainly remedial, but they were recoverable in contract and warranty long before the DTPA was passed. The DTPA adds mental anguish and punitive damages—damages that could hardly be more personal.

*Id*. These distinctions are consistent with the traditional common-law approach to assignment. In 1882, the supreme court distinguished assignable claims relating to property from personal torts that die with the party:

> Such are actions of slander, libel, assault and battery, false imprisonment, *crim. con.*, seduction, etc. On the other hand, when the injury affects the estate rather than the person, when the action is brought for damage to the estate and not for injury to the person, personal feelings or character, the right of action could be bought and sold.

*G.H. & S.A.R.R. v. J. D. Freeman*, 57 Tex. 156, 158 (Tex. 1882). However, assignment of personal injury claims has been the general rule in Texas for over a century. *See Gandy*, 925 S.W.2d at 707; *Gulf, C. & S.F. RY. Co. v. Miller*, 53 S.W. 709, 710-11 (Tex. Civ. App. 1899). Thus, it is only when

14

claims are both personal *and* punitive that there is a risk of distorting litigation. *See Gandy*, 925 S.W.2d at 706; *PPG Indus.*, 146 S.W.3d at 87. The determination of whether a claim may be assigned is ultimately a question of policy.

Avoiding these policy arguments and focusing on the personal aspects of a chapter 103 claim, the State argues that chapter 103 claims are analogous to DTPA claims and should likewise be found unassignable. *See PPG Indus.*, 146 S.W.3d at 89. The State asserts, "if a claim that a person was deceived in a commercial transaction is 'personal' . . . a claim that a person served time for a crime he did not commit must be similarly personal." However, this analogy ignores the significant differences between DTPA claims and a claim under chapter 103. First, the parties often contest whether a consumer was deceived in a DTPA action. By contrast, whether a person was wrongfully convicted will not be contested in a chapter 103 claim because a claimant must have already been pardoned or granted relief on the grounds of actual innocence to be entitled to compensation. Tex. Civ. Prac. & Rem. Code Ann. § 103.001(a). The facts of the underlying criminal prosecution, or the individual's experience in prison, will be irrelevant to a chapter 103 claim.

More importantly, the supreme court's opinion in *PPG Industries* indicates that the damages available in a chapter 103 claim are not "personal." *See* 146 S.W.3d at 89. In the context of DTPA claims, the court distinguished between economic damages that are remedial and "mental anguish and punitive damages—damages that could hardly be more personal." *Id*. Looking to chapter 103, we note that subjective damages such as mental anguish and punitive damages are not available for a wrongful conviction. *See id*. Compensation is limited to the person's lost wages and

15

legal and medical expenses resulting from the wrongful imprisonment. *See id.* It is difficult to imagine economic damages more remedial in nature. These are concrete, objectively measured economic damages that cannot be construed as personal. *See PPG Indus.*, 146 S.W.3d at 89-90.

Nor do the termination provisions of the statute render a chapter 103 claim unassignable. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.154. Under the statute, a wrongfully imprisoned individual's right to receive payment terminates if he dies or is convicted of a felony before payment is made. *See id.* The State cites a court of appeals opinion stating that "in the absence of an express statutory provision to the contrary, a statutory cause of action is not assignable if it is personal to the one who holds it and would not survive his death." *Bay Ridge Util. Dist. v. 4M Laundry*, 717 S.W.2d 92, 96 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (citing *Dearborn Stove Co. v. Caples*, 236 S.W.2d 486, 490 (Tex. 1951)). Here, we have determined that a chapter 103 claim is not personal, and therefore the prohibition on assignment set forth in *Bay Ridge* does not apply. *See id.* (assignment prohibited when claim (1) is personal *and* (2) would not survive death). Even in *Dearborn Stove*, the supreme court held that the remedial aspects of an antitrust claim were assignable, while other damages did not survive death. *See* 236 S.W.2d at 490. Because the only damages available under chapter 103 are remedial, we hold that such a claim is not personal and that it is assignable even though the right to compensation terminates on the death of the wrongfully convicted person.[8] However, the assignee takes only those rights held by the

---

[8] The State's analogy to wrongful death actions is also not applicable. The wrongful death statute specifies that an action may only be brought by the surviving spouse, children, and parents of the decedent. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.004 (West 1997); *Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex. App.—Eastland 2004, no pet.). Exemplary damages are available in a wrongful death action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.009 (West 1997). The right

16

assignor, and his right to payment would terminate if the wrongfully convicted person dies or is convicted of a felony prior to the assignee's receipt of compensation under the statute. We overrule the State's second issue.

**Section 103.153**

In its third and final issue, the State contends that the trial court lacked jurisdiction because Ochoa has already received compensation through the settlement of an earlier lawsuit against the City of Austin. Section 103.153(b) states:

> A person who receives compensation *under this chapter* may not bring an action involving the same subject matter, including an action involving the person's arrest, conviction, or length of confinement, against any governmental unit or an employee of any governmental unit.

Tex. Civ. Prac. & Rem. Code Ann. § 103.153(b) (emphasis added). Without deciding whether this provision is jurisdictional, we find that the plain language of the statute does not support the State's contention. The statute states that a person who receives compensation under chapter 103 may not

---

conferred by the wrongful death statute is considered to be personal, it does not survive the death of a beneficiary, and may not be assigned. *See id*.; *Lowe v. Employers Cas. Co.*, 479 S.W.2d 383, 389 (Tex. Civ. App.—Fort Worth 1972, no writ); *Southern Pac. Co. v. Winton*, 66 S.W. 477, 480 (Tex. Civ. App. 1901, writ ref'd). As discussed above, chapter 103 claims are not personal in nature and only allow for remedial damages. Thus, it is consistent with the case law to treat wrongful death actions, in which exemplary damages are available, differently from chapter 103 claims in terms of assignment. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 (Tex. 2004).

Moreover, chapter 103 provides two specific grounds by which compensation terminates— death or conviction of a felony. Tex. Civ. Prac. & Rem. Code Ann. § 103.154 (West 2005). We will not apply case law limiting assignment where a *cause of action* does not survive the death of the beneficiary to control a statute that only restricts the right to *receive payment*.

17

bring an action involving the same subject matter;[9] it does not state the reverse. *Id*. When Ochoa brought his federal action against the City of Austin, he did not seek and did not receive compensation under chapter 103. Ochoa's suit against the City of Austin alleged intentional violations of his civil rights and negligence by the city, and his recovery was not limited to no-fault economic damages for the wrongful conviction itself. Nothing in the statute prohibits a person who has brought a separate prior action relating to his wrongful imprisonment from bringing a subsequent claim under chapter 103.

Our reading of section 103.153(b) is consistent with case law interpreting a similar provision in the tort claims act. Prior to its amendment, section 101.106 of the tort claims act stated:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

*See Driskill v. State*, 779 S.W.2d 945, 948 (Tex. App.—Fort Worth 1989), *aff'd in relevant part, rev'd in part*, 787 S.W.2d 369 (Tex. 1990). In *Driskill*, the State argued that the plaintiffs' prior settlement with an employee barred suit against the governmental unit. *Id*. The Fort Worth court of appeals disagreed, holding that the statute barred suit against an employee after settlement with the State, but not *vice versa*:

> If the [plaintiffs] had settled their cause of action against the State, section 101.106 would bar an action against [the employee]. Section 101.106 does not bar an action

---

[9] Thus, if Ochoa had first sued the State under chapter 103, he could not subsequently have sued the City of Austin.

against the State because the plain language of the statute does not allow such an interpretation.

*Id.* Likewise, if the legislature intended chapter 103 to provide no-fault recovery of economic damages only if a wrongfully convicted person has received no other compensation, it did not say so.

The State asks us to liberally construe section 103.153, contending that the legislature intended that a person never be compensated by more than one governmental entity. It argues that the chapter's $500,000 limitation on damages for wrongful compensation "is strong evidence . . . that [the] section should not be read as a legislative encouragement to seek additional compensation." This argument ignores the no-fault aspect of the remedy provided by chapter 103, and we are not persuaded that the legislature intended to force an individual to choose between seeking relief for tortious conduct by the State and the no-fault relief provided under chapter 103. Furthermore, the plain language of section 103.153 forecloses any subsequent action against a governmental unit involving the same subject matter once a person receives compensation under chapter 103. Because a chapter 103 claim must be filed no later than the third anniversary of the date the person was pardoned or found not guilty, the bar on subsequent actions limits the State's liability from other actions so long as claims are processed and paid in a timely manner. *See* Tex. Civ. Prac. & Rem. Code Ann. § 103.003.

Based on the plain language of the statute and case law interpreting a similar provision in the tort claims act, we hold that section 103.153 does not bar this suit because Ochoa's

19

previous settlement of federal claims was not brought under chapter 103. We overrule the State's third issue.

**Conclusion**

We hold that the waiver of sovereign immunity in chapter 103 of the civil practices and remedies code includes a suit brought by an assignee of a wrongfully convicted person, that common-law principles permit assignment of such claims, and that the statute does not prohibit a suit by a person who has previously obtained compensation from another governmental unit not based on chapter 103. Having overruled all of the State's issues, we affirm the trial court's denial of the State's plea to the jurisdiction.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear: Opinion by Justice B. A. Smith;
    Dissenting Opinion by Justice Puryear

Affirmed

Filed:  December 16, 2005