IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No.04-0681
════════════
 
Kristin Terk Belt and 
Kimberly Terk Murphy, Joint Independent Executrixes of The Estate of David B. 
Terk, Deceased, Petitioners
 
v.
 
Oppenheimer, Blend, Harrison 
& Tate, Inc., Glen A. Yale, J. David Oppenheimer and Kenneth M. Gindy, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
29, 2005
 
 
Chief Justice Jefferson delivered the 
opinion of the Court. 
 
Justice Green did not participate in 
the decision. 
 
Kristin Terk 
Belt and Kimberly Terk Murphy (the Terks)—the joint, independent executors of 
their father David Terk’s estate—sued several attorneys and their law firm, 
Oppenheimer, Blend, Harrison, & Tate, Inc. (collectively, the Attorneys) for 
legal malpractice. The Attorneys moved for summary judgment on the ground that 
estate planners owe no duty to the personal representatives of a deceased 
client’s estate. The trial court granted the motion, and the court of appeals 
affirmed the judgment. We hold, to the contrary, that there is no legal bar 
preventing an estate’s personal representative from maintaining a legal 
malpractice claim on behalf of the estate against the decedent’s estate 
planners. Accordingly, we reverse the court of appeals’ judgment and remand to 
the trial court for further proceedings. 
I
Background
 
 
David Terk 
hired the Attorneys to prepare his will. After his death, the Terks became the 
joint, independent executors of their father’s estate. As executors, the Terks 
sued the Attorneys for legal malpractice, alleging that the Attorneys were 
negligent in drafting their father’s will and in advising him on asset 
management. They claim the estate incurred over $1,500,000 in tax liability that 
could have been avoided by competent estate planning. 
In affirming 
the trial court’s judgment for the Attorneys, the court of appeals cited 
Barcelo v. Elliott, in which we held that beneficiaries cannot maintain a 
malpractice cause of action against a decedent’s estate-planning attorney 
because the attorney lacks privity with non-client beneficiaries and therefore 
owes them no duty. 141 S.W.3d 706, 708-09 (citing Barcelo, 923 S.W.2d 575 
(Tex. 1996)). The Terks argue that the Barcelo rule bars only claims by 
beneficiaries suing for their own injuries and does not preclude suits brought 
by personal representatives on an estate’s behalf. We granted the Terks’ 
petition to consider whether personal representatives may bring legal 
malpractice claims on behalf of a decedent’s estate. 48 Tex. Sup. Ct. J. 524 
(Apr. 11, 2005).
II
Discussion
 
Legal 
malpractice claims sound in tort. See Cosgrove v. Grimes, 774 S.W.2d 662, 
664 (Tex. 1989). The plaintiff must demonstrate “that (1) the attorney owed the 
plaintiff a duty, (2) the attorney breached that duty, (3) the breach 
proximately caused the plaintiff’s injuries, and (4) damages occurred.” 
Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995). 
 
While an 
attorney always owes a duty of care to a client, no such duty is owed to 
non-client beneficiaries, even if they are damaged by the attorney’s 
malpractice. See Barcelo, 923 S.W.2d at 577. In Barcelo, we 
considered whether beneficiaries dissatisfied with the distribution of estate 
assets may sue an estate-planning attorney for legal malpractice after a 
client’s death. Id. at 576. In that case, the intended 
beneficiaries of a trust, which was declared invalid after the client’s death, 
sued the attorney who drafted the trust agreement. Id. We held that the 
non-client beneficiaries could not maintain a suit against the decedent’s estate 
planner because “the greater good is served by preserving a bright‑line privity 
rule which denies a cause of action to all beneficiaries whom the attorney did 
not represent.” Id. at 578. 
Several 
policy considerations supported our Barcelo holding. First, the threat of 
suits by disappointed heirs after a client’s death could create conflicts during 
the estate-planning process and divide the attorney’s loyalty between the client 
and potential beneficiaries, generally compromising the quality of the 
attorney’s representation. Id. at 578. We also noted that suits 
brought by bickering beneficiaries would necessarily require extrinsic evidence 
to prove how a decedent intended to distribute the estate, creating a “host of 
difficulties.” Id. We therefore held that barring a cause of 
action for estate-planning malpractice by beneficiaries would help ensure that 
estate planners “zealously represent[ed]” their clients. Id. at 
578-79.
Thus, in 
Texas, a legal malpractice claim in the estate-planning context may be 
maintained only by the estate planner’s client. This is the minority rule in the 
United States—only eight other states require strict privity in estate-planning 
malpractice suits.[1] In the majority of states, a 
beneficiary harmed by a lawyer’s negligence in drafting a will or trust may 
bring a malpractice claim against the attorney, even though the beneficiary was 
not the attorney’s client. See, e.g., Lucas v. Hamm, 364 P.2d 685, 
689 (Cal. 1961), cert. denied, 368 U.S. 987 (1962); Schreiner v. 
Scoville, 410 N.W.2d 679, 683 (Iowa 1987). 
 
The question 
in this case, however, is whether the Barcelo rule bars suits brought 
on behalf of the decedent client by his estate’s personal 
representatives. Because most states allow beneficiaries to maintain 
estate-planning malpractice claims, only a handful of jurisdictions have 
considered this specific issue. See, e.g., Beastall v. Madson, 600 
N.E.2d 1323, 1327 (Ill. App. Ct. 1992); Hosfelt v. Miller, No. 97-JE-50, 
2000 Ohio App. LEXIS 5506, at *11-12 (Ohio Ct. App. Nov. 22, 2000); Sizemore 
v. Swift, 719 P.2d 500, 503 (Or. Ct. App. 1986); Rutter v. Jones, 
Blechman, Woltz & Kelly, P.C., 568 S.E.2d 693, 695 (Va. 2002). We 
confront this question for the first time today.
 Generally, 
in Texas an estate’s personal representative[2] has the capacity to bring a survival 
action on behalf of a decedent’s estate. See Austin Nursing Ctr., Inc. v. 
Lovato, 171 S.W.3d 845, 850 (Tex. 2005); see also Tex. Prob. Code § 233A (personal 
representative can institute suit for recovery of estate’s personal property, 
debts or damages). Therefore, if the Terks’ legal malpractice claim is brought 
on behalf of the decedent’s estate and survives the decedent, the Terks may 
maintain a suit against the Attorneys.
A
 
When no 
statute addresses the survivability of a cause of action, we apply common law 
rules. Thomes v. Porter, 761 S.W.2d 592, 594 (Tex. App.–Fort Worth 1988, 
no writ). “[A]t common law all causes of action for damages die with the person 
of the party injured, or the person inflicting the injury, except such damages 
as grow out of acts affecting the property rights of the injured party.” 
Johnson v. Rolls, 79 S.W. 513, 514 (Tex. 1904); see also Landers v. B. 
F. Goodrich Co., 369 S.W.2d 33, 34 (Tex. 1963) (refusing to depart from 
long-standing rule that an action for damage to real or personal property 
survives the death of the owner). Thus, absent a statute providing to the 
contrary, a cause of action that is penal or personal in nature typically does 
not survive, while claims that are contractual in nature or affect property 
rights survive the death of either party. See 1 Am. Jur. 2d Abatement, Survival and 
Revival § 65 (2006). 
 
We have never 
specifically considered whether a legal malpractice claim in the estate-planning 
context survives a deceased client. A claim that an estate planner’s negligence 
resulted in the improper depletion of a client’s estate involves injury to the 
decedent’s property. See Tex. 
Prob. Code § 3(z) (defining the “personal property” of an estate to 
include interests in goods, money, and choses in action); see also Williams 
v. Adams, 193 S.W. 404, 405 (Tex. Civ. App.–Texarkana 1917, writ ref’d) 
(tort claim alleging fraud, which resulted in financial loss to the plaintiff, 
survived the death of the defendant because it involved the wrongful acquisition 
of property); Cleveland v. United States, No. 00-C-424, 2000 U.S. 
Dist. LEXIS 18908, at *9 (N.D. Ill. Dec. 27, 2000) (tort claim for financial 
loss resulting from estate-planning malpractice deemed an action for damage to 
personal property). Moreover, when an attorney’s malpractice results in 
financial loss, the aggrieved client is fully compensated by recovery of that 
loss; the client may not recover damages for mental anguish or other personal 
injuries. See Douglas v. Delp, 987 S.W.2d 879, 885 (Tex. 1999).
 
Thus, 
estate-planning malpractice claims seeking recovery for pure economic loss are 
limited to recovery for property damage. See id. Therefore, in accordance 
with the long-standing, common-law principle that actions for damage to property 
survive the death of the injured party, we hold that legal malpractice claims 
alleging pure economic loss survive in favor of a deceased client’s estate, 
because such claims are necessarily limited to recovery for property damage.[3] See G. H. & S. A. R. R. v. 
Freeman, 57 Tex. 156, 158 (Tex. 1882) (a cause of action “brought for damage 
to the estate and not for injury to the person, personal feelings or character, 
. . . upon the death, bankruptcy or insolvency of the party injured, passes to 
the executor or assignee as a part of his assets, because it affects his estate, 
and not his personal rights”); see also Traver v. State Farm Mut. Auto. Ins. 
Co., 930 S.W.2d 862, 871 (Tex. App.–Fort Worth 1996) rev’d on other 
grounds, 980 S.W.2d 625 (Tex. 1998) (legal malpractice claim arising from 
representation in personal injury case survives death of client).
The court of 
appeals found for the Attorneys after holding that its prior decision in 
Estate of Arlitt v. Paterson controlled. 141 S.W.3d at 708. In Estate 
of Arlitt, the court held that an estate-planning malpractice claim does not 
accrue during a decedent’s lifetime—and therefore does not survive the 
decedent—because the estate’s injuries do not arise until after death.[4] See Estate of Arlitt v. 
Paterson, 995 S.W.2d 713, 720 (Tex. App.–San Antonio 1999, pet. denied). 

 
We disapprove 
Estate of Arlitt’s holding that no legal malpractice claim accrues before 
death when an estate-planning attorney’s negligent drafting results in increased 
estate tax consequences. Even though an estate may suffer significant damages 
after a client’s death, this does not preclude survival of an estate-planning 
malpractice claim. While the primary damages at issue here—increased tax 
liability—did not occur until after the decedent’s death, the lawyer’s alleged 
negligence occurred while the decedent was alive. Apex Towing Co. v. 
Tolin, 41 S.W.3d 118, 120 (Tex. 2001) (legal malpractice claim accrues “when 
facts have come into existence that authorize a claimant to seek a judicial 
remedy”). If the decedent had discovered this injury prior to his death, he 
could have brought suit against his estate planners to recover the fees paid to 
them. See, e.g., Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999) (client 
need not prove actual damages in order to obtain forfeiture of attorney’s fees 
for the attorney’s “clear and serious” breach of fiduciary duty to the client). 
In addition, the decedent could have recovered the costs incurred in 
restructuring his estate to minimize tax liability. See, e.g., Porter v. 
Ogden, Newell, & Welch, 241 F.3d 1334, 1337 (11th Cir. 2001) (allowing 
suit to recover client’s costs, incurred during his lifetime, in curing problems 
created by negligent drafting of trust document, including funds expended in 
seeking judicial reformation of the trust and in lobbying the Florida 
legislature to change law affecting the trust). Therefore, if the injury occurs 
during the client’s lifetime, a claim for estate-planning malpractice survives 
the client’s death.[5] See Russell v. Ingersoll‑Rand 
Co., 841 S.W.2d 343, 345 (Tex. 1992) (decedent must suffer an “actionable 
wrong” during lifetime for claim to survive). 
B
 
Because legal 
malpractice claims survive in favor of the decedent’s estate, the estate has a 
justiciable interest in the controversy sufficient to confer standing. See 
Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 850 (Tex. 2005). A 
decedent’s estate, however “is not a legal entity and may not properly sue or be 
sued as such.” Id. at 849. (citing Price v. Estate of 
Anderson, 522 S.W.2d 690, 691 (Tex. 1975)). Rather, certain individuals have 
the capacity to bring a claim on the estate’s behalf. Id. Generally, 
“only the estate’s personal representative has the capacity to bring a survival 
claim.” Id. at 850-51 (noting that in certain circumstances, heirs 
may bring suit on behalf of the estate, such as when no administration is 
pending or necessary).
 
In this case, 
it is undisputed that the Terks are the independent executors of their father’s 
estate. Thus, they may bring a claim on behalf of the estate in their capacity 
as personal representatives. Lovato, 171 S.W.3d at 850; see also 
Tex. Prob. Code § 3(aa) 
(definition of “personal representative” includes independent executor of an 
estate). We have previously held that a bankruptcy trustee can maintain a legal 
malpractice claim on behalf of a debtor’s estate, and we see no reason to 
curtail a personal representative’s similar malpractice claim on behalf of a 
decedent’s estate. See Douglas v. Delp, 987 S.W.2d 879, 882 (Tex. 1999) 
(once party with legal malpractice claim declares bankruptcy, trustee of 
bankruptcy estate is only party with standing to pursue the claim). This holding 
is in accord with other jurisdictions, which have also recognized that, because 
the estate “stands in the shoes” of a decedent, it is in privity with the 
decedent’s estate-planning attorney and, therefore, the estate’s personal 
representative has the capacity to maintain the malpractice claim on the 
estate’s behalf.[6] 
C
 
In holding 
for the Attorneys, the court of appeals noted that the policy concerns expressed 
in Barcelo concerning suits against estate planners by intended 
beneficiaries should also bar suits brought by personal representatives of an 
estate. 141 S.W.3d at 708. As noted above, in Barcelo we held that an 
attorney’s ability to represent a client zealously would be compromised if the 
attorney knew that, after the client’s death, he could be second-guessed by the 
client’s disappointed heirs. 923 S.W.2d at 578. Accordingly, we held that 
estate-planning attorneys owe no professional duty to beneficiaries named in a 
trust or will. Id. at 578-79. 
 
While this 
concern applies when disappointed heirs seek to dispute the size of their 
bequest or their omission from an estate plan, it does not apply when an 
estate’s personal representative seeks to recover damages incurred by the estate 
itself. Cases brought by quarreling beneficiaries would require a court to 
decide how the decedent intended to apportion the estate, a near-impossible task 
given the limited, and often conflicting, evidence available to prove such 
intent. See id. at 578 (noting the problems associated with allowing 
extrinsic evidence to prove testator intent). In cases involving depletion of 
the decedent’s estate due to negligent tax planning, however, the personal 
representative need not prove how the decedent intended to distribute the 
estate; rather, the representative need only demonstrate that the decedent 
intended to minimize tax liability for the estate as a whole.[7] 
Additionally, 
while the interests of the decedent and a potential beneficiary may conflict, a 
decedent’s interests should mirror those of his estate. Thus, the conflicts that 
concerned us in Barcelo are not present in malpractice suits brought on 
behalf of the estate. See Nevin v. Union Trust Co., 726 A.2d 694, 701 
(Me. 1999) (holding that the better rule is to allow only personal 
representatives, not beneficiaries, to sue for estate-planning malpractice, 
because what may be good for one beneficiary is not necessarily good for the 
estate as a whole).
 
We note, 
however, that beneficiaries often act as the estate’s personal representative, 
and our holding today arguably presents an opportunity for some disappointed 
beneficiaries to recast a malpractice claim for their own “lost” inheritance, 
which would be barred by Barcelo, as a claim brought on behalf of the 
estate.[8] The temptation to bring such claims 
will likely be tempered, however, by the fact that a personal representative who 
mismanages the performance of his or her duties may be removed from the 
position. See Tex. Prob. 
Code § 222(b)(4). Additionally, even assuming that a beneficiary 
serving as personal representative could prove, for example, that the deceased 
client intended to maximize the size of the entire estate by leaving a larger 
inheritance to the personal representative, he or she would not necessarily 
recover the lost inheritance should the malpractice claim succeed. Because the 
claim allowed under our holding today is for injuries suffered by the 
client’s estate, any damages recovered would be paid to the estate 
and, only then, distributed in accordance with the decedent’s existing estate 
plan. See Russell, 841 S.W.2d at 345 (recovery in survival action flows 
to those who would have received it had it been part of decedent’s estate 
immediately prior to death). Thus, the recovery would flow to the disappointed 
beneficiary only if the estate plan had provided for such a distribution, 
fulfilling the decedent’s wishes. These factors prevent personal representatives 
who are also beneficiaries from using our holding today as an end run around 
Barcelo. 
Since our 
decision in Barcelo, we have allowed non-clients to maintain negligent 
misrepresentation suits against attorneys despite a lack of privity. 
McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 
S.W.2d 787, 791 (Tex. 1999) (party who entered into settlement agreement with 
lender, which could not be enforced after lender was declared insolvent, could 
bring suit against lender’s attorneys for representing that agreement would be 
enforceable). In doing so, we noted that the policy concerns expressed in 
Barcelo did not apply in the negligent misrepresentation context. 
Id. at 793. Such suits arise only in situations where an attorney 
has determined that communication with the third party is compatible with the 
attorney-client relationship and the attorney receives consent from the client 
to communicate with the non-client. Id. Thus, we held that allowing the 
third party to bring a negligent misrepresentation claim would not cause the 
client to “lose control over the attorney-client relationship,” a concern we 
expressed in Barcelo. Id. Additionally, we found that allowing 
negligent misrepresentation claims by non-clients would not subject attorneys to 
“almost unlimited liability,” because liability was limited to those situations 
in which the attorney provided information to a third party with the knowledge 
that the third party intended to rely on it. Id. at 794. 
 
These 
principles apply here. Limiting estate-planning malpractice suits to those 
brought on behalf of a client’s estate by a personal representative will prevent 
the client from “losing control of the attorney-client relationship,” because 
the interests of the estate—which merely “stands in the shoes” of the client 
after death—are compatible with the client’s interests. Additionally, limiting 
the class of potential estate-planning malpractice claimants to the personal 
representatives of a client’s estate will ensure that estate-planning attorneys 
are not subject to “almost unlimited liability.” 
Finally, we 
note that precluding both beneficiaries and personal representatives from 
bringing suit for estate-planning malpractice would essentially immunize 
estate-planning attorneys from liability for breaching their duty to their 
clients. As the Barcelo dissent noted, however, allowing estate-planning 
malpractice suits may help “provide accountability and thus an incentive for 
lawyers to use greater care in estate planning.” 923 S.W.2d at 580 (Cornyn, J., 
dissenting). Limiting estate-planning malpractice suits to those brought by 
either the client or the client’s personal representative strikes the 
appropriate balance between providing accountability for attorney negligence and 
protecting the sanctity of the attorney-client relationship.
 
III
Conclusion
 
The Terks—in 
their capacity as personal representatives of their father’s estate—may maintain 
an estate-planning malpractice claim against the Attorneys. We therefore reverse 
the court of appeals’ judgment and remand to the trial court for further 
proceedings consistent with this opinion. Tex. R. App. P. 60.2(d).
 
 
______________________________
Wallace B. 
Jefferson
Chief Justice 

 
 
 
OPINION 
DELIVERED:     May 5, 2006






[1] See Robinson v. Benton, 842 So. 2d 631, 637 
(Ala. 2002); Pettus v. McDonald, 36 S.W.3d 745, 751 (Ark. 2001); Nevin 
v. Union Trust Co., 726 A.2d 694, 701 (Me. 1999); Noble v. Bruce, 709 
A.2d 1264, 1278 (Md. 1998); Swanson v. Ptak, 682 N.W.2d 225, 231 (Neb. 
2004); Deeb v. Johnson, 566 N.Y.S.2d 688, 689 (N.Y. App. Div. 
1991); Simon v. Zipperstein, 512 N.E.2d 636, 638 (Ohio 1987); 
Copenhaver v. Rogers, 384 S.E.2d 593, 595 (Va. 1989). 

[2] The definition of “personal representative” includes an 
"executor, independent executor, administrator, independent administrator, [or] 
temporary administrator, together with their successors." Tex. Prob. Code § 3(aa). 


[3] A number of other jurisdictions have allowed legal 
malpractice claims to survive a decedent. See, e.g., Loveman v. Hamilton, 
420 N.E.2d 1007, 1008 (Ohio 1981) (holding that, regardless of whether a legal 
malpractice action sounds in contract or tort, “the gist of the action...is the 
attorney’s breach of his contractual obligation to represent his client”); 
see also Jones v. Siesennop, 371 N.E.2d 892, 895 (Ill. App. Ct. 1977) 
(action for legal malpractice could be construed as “personal property” within 
the meaning of the state’s survival statute); McStowe v. Bornstein, 388 
N.E.2d 674, 677 (Mass. 1979); Johnson v. Taylor, 435 N.W.2d 127, 129 
(Minn. Ct. App. 1989); Newbach v. Giaimo & Vreeburg, 618 N.Y.S.2d 
307, 308 (N.Y. App. Div. 1994) (legal malpractice claim survives in favor of 
estate when decedent was injured by attorney’s negligence during his lifetime). 


[4] Some states have used similar reasoning in determining 
that estate planning malpractice claims do not survive, and a few of those 
courts have held that language in their state’s survival statute necessitated 
such a result. See McDonald v. Pettus, 988 S.W.2d 9, 15 (Ark. 1999) 
(personal representative could not bring tort-based malpractice claim on behalf 
of decedent; Arkansas’s survival statute required decedent suffer injury or 
damages prior to death, but injury or damages caused by estate-planning 
malpractice did not occur until will took effect after death); Rutter, 
568 S.E.2d at 695 (no survival action because claim did not “exist” prior to 
death—as required by Virginia’s survival statute—since the client’s estate did 
not suffer damage or injury until after client’s death); see also 
Brewer v. Davis, 593 So. 2d 67, 68 (Ala. 1991) (state’s survival statute 
precluded survival of a tort-based malpractice action that was not filed until 
after client’s death). Other jurisdictions, however, have held such claims do 
not survive as a matter of common law. See Deeb, 566 N.Y.S.2d at 689 (in 
New York, malpractice claim did not survive because estate did not incur damages 
until after client’s death); Heyer v. Flaig, 449 P.2d 161, 165 (Cal. 
1961) (noting that “the executor of an estate has no standing..., since in the 
normal case the estate is not injured by [negligent estate planning] except to 
the extent of the [attorney’s] fees paid”). 

[5] We note that, while an injury occurred during the 
decedent’s lifetime for purposes of determining survival, the statute of 
limitations for such a malpractice action does not begin to run until the 
claimant “discovers or should have discovered through the exercise of reasonable 
care and diligence the facts establishing the elements of [the] cause of 
action.” Apex Towing Co. v. Tolin, 41 S.W.3d 118, 121 (Tex. 2001); 
Willis v. Maverick, 760 S.W.2d 642, 646 (Tex. 1988); see also Little 
v. Smith, 943 S.W.2d 414, 420 (Tex. 1997) (statute of limitations for breach 
of fiduciary duty claim does not begin to run until claimant “knew or should 
have known of facts that in the exercise of reasonable diligence would have led 
to the discovery of the wrongful act”). In this case, the “claimant” may be 
either the decedent or the personal representative of the decedent’s estate. 


[6] See Stanley L. & Carolyn M. Watkins Trust v. 
Lacosta, 92 P.3d 620, 625 (Mont. 2004) (citing Espinosa v. 
Sparber, Shevin, Shapo, Rosen & Helbronner, 612 So. 2d 1378, 1380 
(Fla. 1993)); Hosfelt v. Miller, No. 97-JE-50, 2000 Ohio App. LEXIS 5506, 
at *17 (Ohio Ct. App. Nov. 22, 2000) (holding that a “legal malpractice claim 
arising from errors by an attorney in rendering estate-planning services is 
properly brought by the personal representative of the estate when excess estate 
taxes are paid by the estate in contravention of the decedent’s intended estate 
plan”); Sizemore, 719 P.2d at 503 (administrator of estate in Oregon 
could sue estate-planning attorneys to recover costs incurred by the estate 
during litigation concerning a negligently-drafted will). 

[7] A testator may intentionally 
structure the estate in a way that does not minimize tax liability. Thus, courts 
should not presume that the testator intended to minimize tax liability; rather, 
it is the complaining party’s burden to present evidence of this 
intent.

[8] For example, a spouse that is both a beneficiary and 
personal representative may argue that, if the estate-planning attorney had not 
committed malpractice, the spouse would have received a larger inheritance and 
the decedent’s estate would have suffered a lower tax burden, because the estate 
could have taken better advantage of the unlimited marital tax deduction. Under 
our holding today, a personal representative could maintain such a claim only if 
the representative established that the estate-planning attorney negligently 
failed to structure the estate in accordance with the testator’s wishes, and the 
estate incurred damages as a result.